United States Court of Appeals,

Fifth Circuit.

No. 91–1371.

Othar RUSSELL, et al., Plaintiffs–Appellants,

v.

SUNAMERICA SECURITIES, INC., Defendant–Appellee.

June 15, 1992.

Appeal from the United States District Court for the Southern District of Mississippi.

Before KING, JOHNSON, and DAVIS, Circuit Judges.

KING, Circuit Judge:

Plaintiffs Othar Russell, Donna Russell, Bobby Joe Russell, Carolyn Russell, Charles H. Sheffield, Margaret Sheffield, and Bonnie S. Brooks appeal from the district court's grant of summary judgment against them in favor of SunAmerica Securities, Inc. The district court found that a release signed by Plaintiffs and Southmark Financial Services, Inc., a corporation whose assets were purchased by SunAmerica, also released SunAmerica. We find that Plaintiffs' action is foreclosed by the doctrine of res judicata, and affirm the judgment of the district court on this ground.

I. FACTS AND PROCEDURAL HISTORY

In 1988, Plaintiffs brought an action against Southmark Financial Services, Inc. ("Southmark"), Equivest, Inc., and D. Andrew Pickens in the Southern District of Mississippi, Jackson Division ("1988 action"), alleging causes of action for violation of state and federal securities laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and for common law fraud, breach of contract, and gross negligence. Southmark was a broker-dealer registered under the Securities Exchange Act of 1934 and licensed by the National Association of Securities Dealers, Inc. Plaintiffs alleged that Pickens, in his capacity as branch manager for and agent of Southmark, induced Plaintiffs to transfer money to him based upon fraudulent

representations that the money would be used to purchase securities which he recommended to them for investment purposes. Plaintiffs averred that Pickens failed to invest any of the money as promised, and instead wrongfully converted and embezzled the money for his own and Southmark's benefit. Southmark, argued Plaintiffs, was vicariously liable for Pickens' wrongdoing and was liable for its own gross negligence in failing to supervise and investigate its operations so as to discover Pickens' activities.

On March 24, 1989, SunAmerica Securities, Inc. ("SunAmerica") entered into an asset purchase agreement with Southmark. Under this agreement, SunAmerica acquired Southmark's contract rights with registered sales representatives, various books and records, furniture, and fixtures, in return for which SunAmerica paid a sum of cash and a portion of its income derived from activities of the registered representatives over a two-year period. According to the agreement, SunAmerica did not assume any of Southmark's liabilities.

Ultimately, Plaintiffs entered into a settlement agreement with Southmark. The parties executed a release, which provided that for $105,000, Plaintiffs released Southmark from "any and all past, present, or future claims." The Plaintiffs expressly did not release Pickens or Equivest, Inc. On the basis of this release, Southmark was dismissed as a defendant by an agreed order of dismissal with prejudice and consent judgment entered by the district court on April 30, 1990.

Shortly thereafter, on July 10, 1990, Plaintiffs brought the present action in the Southern District of Mississippi, Eastern Division, against SunAmerica and Pickens. Plaintiffs' complaint in the instant action contained allegations essentially identical to those in the 1988 action, together with allegations that SunAmerica, by virtue of its having acquired the assets of and continued operation of Southmark, is liable as a successor corporation to Southmark for the torts and debts of Southmark. The release of Southmark did not release SunAmerica, Plaintiffs argued, because it did not specifically provide for the release of SunAmerica, and the parties did not intend for the release to affect

SunAmerica. They also alleged that SunAmerica's purchase of Southmark's assets was fraudulent, and designed to remove funds that might have been available to pay Plaintiffs' claims. Alternatively, Plaintiffs contended that the release was only partial and did not preclude further litigation.

On October 19, 1990, SunAmerica moved in the Eastern Division to transfer the case to the Jackson Division (where the 1988 action against Pickens was still pending), consolidate the two cases, or dismiss the instant action for failure to state a claim. Alternatively, SunAmerica moved for summary judgment, arguing that it could not be liable as the successor to Southmark because its purchase of Southmark's assets left Southmark with sufficient assets to pay Plaintiffs' claims. Next, it argued that its purchase of assets was in no way fraudulent. Finally, SunAmerica argued that the release signed in April 1990 precluded relitigation of Plaintiffs' claims.

On March 6, 1991, the district court granted SunAmerica's motion for summary judgment, reasoning that where liability is sought to be imposed against a successor corporation for the torts of its predecessor, the successor's liability, if any, derives exclusively from the liability to which the predecessor could have been subjected. Thus, continued the district court, SunAmerica could have no greater liability to Plaintiffs than did Southmark. With regard to Plaintiffs' claim that the release was only partial, the court disagreed. According to the court, "[g]iven the comprehensive nature of the language of the release, it strains credibility for plaintiffs to now take the position that they never intended to release all of their claims against Southmark relating to Pickens' activities." Because Southmark was completely released from liability, reasoned the court, SunAmerica was similarly released. A final order was entered in favor of SunAmerica on March 14, 1991. Plaintiffs timely filed a notice of appeal.

## II. DISCUSSION

On appeal, Plaintiffs argue that the district court erred in holding that the release of Southmark necessarily released SunAmerica, inasmuch as the release did not specifically mention

SunAmerica or manifest an intention by the parties to release any corporate successor to Southmark. Plaintiffs argue in the alternative that, even if the language of the release does include SunAmerica, the release itself is invalid because it was procured through the fraudulent misrepresentations of Southmark's attorneys that Southmark was insolvent and could not pay any more toward Plaintiffs' claims.

We need not address Plaintiffs' primary contention because we find that their relitigation of the claims against SunAmerica is barred by res judicata. We begin by noting that SunAmerica did not plead the doctrine of res judicata as an affirmative defense. Under Federal Rule of Civil Procedure 8(c), the doctrine must be affirmatively pled. Failure to so plead usually precludes the district court and appellate courts from considering the doctrine. *Carbonell v. Louisiana Dep't of Health & Human Servs.,* 772 F.2d 185, 189 (5th Cir.1985). We have held, however, that we may raise the issue of res judicata *sua sponte* "as a means to affirm the district court decision below." *United Home Rentals, Inc. v. Texas Real Estate Comm'n,* 716 F.2d 324, 330 (5th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984); *see also Robertson v. Interstate Securities Co.,* 435 F.2d 784, 787 n. 4 (8th Cir.1971). In *American Furniture Co. v. International Accommodations Supply,* 721 F.2d 478, 482 (5th Cir.1981), we noted as follows:

> We are cognizant that *res judicata,* as such, has not been specially pled. Fed.R.Civ.P. 8(c). In the posture of this case, however, where all of the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to the dispositive facts, simply because neither party has seen fit to invite our attention to the issue by technically correct and exact pleadings. We do so *sua sponte.*

*See also Nagle v. Lee,* 807 F.2d 435, 438 n. 2 (5th Cir.1987); *see generally Meza v. General Battery Corp.,* 908 F.2d 1262, 1274 (5th Cir.1990) (appellate court may affirm a summary judgment on grounds other than those relied upon by the district court when it finds in the record an adequate and independent basis for that result); *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1255 (5th Cir.1990) (same). In the instant case, the relevant facts are in the record before us and form an adequate basis for our invocation of res judicata.

Federal law determines the res judicata effect of a prior federal court judgment. *Meza,* 908 F.2d at 1265; *In re Air Crash at Dallas/Ft. Worth Airport,* 861 F.2d 814, 816 (5th Cir.1988). Application of res judicata is proper only if the following four requirements are met: (1) the parties must be identical in the two suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Meza,* 908 F.2d at 1265; *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 188 (5th Cir.1990); *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir.1983) (en banc). As to the second element, the parties do not question the jurisdiction of the Southern District of Mississippi in the first action. As to the third element, this court has long recognized that a consent judgment is a judgment on the merits, and is normally "given the finality accorded under the rules of claim preclusion." *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 538–39 (5th Cir.1978); *see also Bradford v. Bronner,* 665 F.2d 680 (5th Cir.1982); *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir.1947). The fourth element is satisfied because this action and the 1988 action involved essentially the same allegations regarding the same underlying tortious acts of Pickens. *See Citibank, N.A. v. Data Lease Financial Corp.,* 904 F.2d 1498, 1503 (11th Cir.1990) (" "if a case arises out of the same nucleus of operative facts, or is based upon the same predicate, as a former action, ... the two cases are really the same "claim" or "cause of action" for purposes of *res judicata*' ") (citation omitted).

In response to our request for supplemental briefing on this issue, Plaintiffs contest only the first element, identity of parties.[1] Plaintiffs contend, for purposes of this issue, that SunAmerica is

---

[1]Plaintiffs also argue that a settlement agreement resulting in a consent judgment may not be invoked by a non-party to justify claim preclusion in favor of the non-party. To do so, argue Plaintiffs, would extend the reach of the settlement agreement beyond the scope of the parties' expected bargain. This argument is without merit. As we noted in *Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279, 1288 (5th Cir.1989), "the existence of a settlement agreement is ... irrelevant to the operation of claim preclusion." We note that had Plaintiffs obtained judgment after trial against Southmark, and then filed the present action against SunAmerica, the principles of claim preclusion would apply as they do now. *See id.; see also Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115 (S.D.N.Y.1986) (holding that scope of release which formed basis of consent judgment is irrelevant where defendant in second action was in privity with defendants in earlier action), *aff'd,* 822 F.2d 14 (2d Cir.1987). In either case, the issue concerns the extent to

a different entity than Southmark, and that there is therefore no identity between the defendants in this action and those in the 1988 action. SunAmerica responds that, insofar as the heart of Plaintiffs' theory of recovery is that SunAmerica is a "mere continuation" of Southmark, the requirement of identity of parties is necessarily satisfied.

To satisfy the identity element, strict identity of parties is not necessary. A non-party defendant can assert res judicata so long as it is in "privity" with the named defendant. *See Nevada v. United States,* 463 U.S. 110, 129, 103 S.Ct. 2906, 2917, 77 L.Ed.2d 509 (1983); *Baylor v. HUD,* 913 F.2d 223, 225 (5th Cir.1990). "Privity" is recognized as a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified. As one treatise has noted,

> [e]xceptions to the rule that nonparties cannot be bound were traditionally expressed by statements that a judgment is binding on parties and persons in "privity" with them. Older definitions of privity were very narrow. As the preclusive effects of judgments have been expanded to include nonparties in more and more situations, however, it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper. Modern decisions search directly for circumstances that justify preclusion.

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4449, at 418–19 (1981); *see also Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir.) (privity is nothing more than a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion") (citation omitted), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *Bruszewski v. United States,* 181 F.2d 419, 423 (3rd Cir.) (Goodrich, J., concurring) ("Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."), *cert. denied,* 340 U.S. 865, 71 s.Ct. 87, 95 L.Ed. 632 (1950). As case law and scholars recognize, "privity" is not a requirement we can satisfy through

---

which the non-party, here SunAmerica, may assert the benefit of a judgment against a prior defendant.

inquiry; rather the existence of "privity" is the inquiry satisfied. In short, parties which are sufficiently related to merit the application of claim preclusion are in privity. With this in mind, our analysis is particularly fact-based, and hinges upon SunAmerica's precise relationship to Southmark.

Unfortunately, we have little guidance as to whether a corporation and its successor are sufficiently related for preclusion purposes. Both parties recognize that SunAmerica's liability in the instant case as a successor corporation is, if anything, derivative; that is, SunAmerica's alleged liability for Pickens' conduct derives from that of Southmark, and if Southmark is not liable to Plaintiffs, then SunAmerica is likewise not liable. We do have some guidance from other circuits in another field of derivative liability: vicarious liability in the employment context.

Several circuits have considered whether a vicarious liability relationship constitutes sufficient privity to merit the application of claim preclusion. In *Spector v. El Ranco, Inc.,* 263 F.2d 143 (9th Cir.1959), a hotel guest brought suit against a hotel employee for injuries sustained at the hotel. There had been an earlier verdict and judgment on the same claim in favor of the hotel. The Ninth Circuit held that the employee was entitled to raise the prior judgment as a bar to the plaintiff's action against him:

> Where, as here, the relations between two parties are analogous to that of principal and agent, the rule is that a judgment in favor of either, in an action brought by a third party, rendered upon a ground equally applicable to both, is to be accepted as conclusive against the plaintiff's right of action against the other.

*Id.* at 145; *see also Pelletier v. Zweifel,* 921 F.2d 1465, 1502 (11th Cir.) (finding privity for purposes of res judicata between principal and agent), *cert. denied,* —— U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); *Mandarino v. Pollard,* 718 F.2d 845, 850 (7th Cir.1983) (finding privity for res judicata purposes between corporation and its officers and directors); *see also Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1122 (S.D.N.Y.), *aff'd,* 822 F.2d 14 (1987).

The Seventh Circuit interpreted the *Spector* decision in *Lambert v. Conrad,* 536 F.2d 1183

(7th Cir.1976). In *Lambert,* a discharged university employee brought a civil rights action against employees of the board of regents following dismissal of an earlier action against the board itself. After noting that both suits pertained to the same operative facts, the Seventh Circuit stated:

> The present defendants are employees of the Board which was the defendant in the prior action. In *Spector v. El Ranco, Inc.,* 263 F.2d 143 (9th Cir.1959), the Ninth Circuit held that a suit against an employee was barred by a judgment in favor of his employer.... Apparently there was no question that the employee had been acting within the scope of his employment at the time of his actions relating to the accident which occurred.... We hold that the difference in the identity of the defendants in the present action from those in the prior action is insufficient reason to prevent plaintiff from being bound.

*Id.* at 1186; *see also Lober v. Moore,* 417 F.2d 714 (D.C.Cir.1969) (summary judgment sustained on res judicata grounds in favor of a cab driver in a personal injury action brought by a passenger after losing a lawsuit against the cab company).

More recently, the First Circuit decided a case on similar grounds. In *Fiumara v. Fireman's Fund Insurance Co.,* 746 F.2d 87 (1st Cir.1984), the plaintiff sued insurers, insurance investigators, and a testing laboratory, alleging that the defendants intentionally inflicted emotional distress upon him by their attempt to show that he had deliberately set a fire. The First Circuit held that an earlier judgment in a suit filed against the insurers alone barred plaintiff's claims against the insurance investigators and the testing laboratory:

> The appellant is similarly foreclosed from raising his claims against the investigators and the testing laboratory.... [G]iven the allegations of the federal complaint that [defendants-appellees] were each and all acting as agents of the insurers when they committed the putative misdeeds for which they have now been sued, they clearly qualify as persons in privity with [the original defendants]. Thus, the res judicata defense is unmistakably available to them.

*Id.* at 92 (citations omitted); *see also Citibank,* 904 F.2d at 1502–04; W. Prosser & R. Keeton, *The Law of Torts* § 69, at 449 n. 3 (5th ed. 1984) ("a judgment for A in an action brought against him by C is res judicata as to B's vicarious liability to C"); *Restatement (Second) of Judgments* § 51(3) (1980) ("If the action is brought against the primary obligor and judgment is against the injured person, it extinguishes the claims against the person vicariously responsible if under applicable law

the latter is an indemnitor whose liability arises only when the primary obligor is found liable to the injured person.").

We faced a similar issue in *Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279 (5th Cir.1989). In 1982, Lubrizol brought suit in federal district court in New Jersey against Exxon for infringement of Lubrizol's patents. Lubrizol also argued that two employees of Exxon filed false affidavits in the action which misled Lubrizol's experts. The parties executed a settlement agreement in 1984, and the district court dismissed the action with prejudice. In 1985, Lubrizol filed suit in the Southern District of Texas against the two employees for fraud, based upon the alleged misinformation contained in the affidavits filed in the New Jersey action. The employees moved to dismiss the case based on res judicata, which the district court converted to a motion for summary judgment and granted in favor of the employees.

On appeal, this court recognized that only the element of identity of parties was seriously in dispute. Citing *Spector, Lambert,* and *Fiumara,* we noted that most other federal circuits have concluded that employer-employee or principal-agent relations may constitute grounds for application of res judicata. *Id.* at 1288. We then summarized the state of the law in other circuits as follows:

> The doctrinal basis for these decisions has varied according to their fidelity to traditional mutuality or privity concepts, but they share a common practical thread. Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief—the courts have denied the plaintiff a second bite at the apple.

*Id.* In *Lubrizol,* we declined to make any broad pronouncements as to the extent of the concept of privity, holding only that, under the circumstances before us, the vicarious liability relationship between Exxon and its two employees justified claim preclusion. *Id.* at 1289.

The cases which find that a vicarious liability relationship justifies a finding of privity are

instructive here. Indeed, the derivative liability in an employer-employee relationship is analogous to that of a corporation and its successor under certain circumstances. Generally, a corporation which acquires the assets (but not the stock) of another corporation is not obligated for the liabilities of the corporation from which the assets are acquired. *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 174 (5th Cir.1985). There are four exceptions to this rule:

> (1) When the successor expressly or impliedly agrees to assume the liabilities of the predecessor;
>
> (2) When the transaction may be considered a *de facto* merger;
>
> (3) When the successor may be considered a "mere continuation" of the predecessor; or
>
> (4) When the transaction was fraudulent.

*Id.*

The gravamen of Plaintiffs' suit is that SunAmerica is a "mere continuation" of Southmark, and hence liable for the torts of its predecessor. In arguing this theory of recovery, Plaintiffs set forth the following features shared by Southmark and SunAmerica.[2] Prior to the purchase date, Southmark

---

[2]There are eight factors which are typically taken into account in determining if the successor corporation is a "mere continuation" of the predecessor:

> (1) Retention of the same employees;
>
> (2) Retention of the same supervisory personnel;
>
> (3) Retention of the same production facility in the same physical location;
>
> (4) Production of the same product;
>
> (5) Retention of the same name;
>
> (6) Continuity of assets;
>
> (7) Continuity of general business operations; and
>
> (8) Whether the successor holds itself out as the continuation of the previous enterprise.

*Id.* at 175.

had thirty-four full-time employees; following purchase, SunAmerica had the same thirty-four employees, most of whom earned the same salary. Southmark had 1,375 registered representatives; the records of all 1,375 representatives were "transferred" to SunAmerica following the purchase date. SunAmerica operated with many of the same officers as Southmark, including the president, treasurer, executive vice-president for marketing, and vice-president for recruiting, each of whom earned the same salary as at Southmark. In addition, for more than a year following the date of purchase, SunAmerica operated its securities home office using the same space, furniture, and equipment as had Southmark.

We do not opine as to whether the similarities of or continuity between the two corporations give rise to liability on the part of SunAmerica for the torts of Southmark as a "mere continuation" of Southmark. Nor need we now, as we declined to do in *Lubrizol,* make any broad pronouncements with regard to the outer reaches of privity. Rather, we hold that the relationship between Southmark and SunAmerica is close enough to justify the application of res judicata so as to bar a second suit based on the same cause of action as the first suit, particularly where, as here, the gravamen of the Plaintiffs' second suit is that the defendant in that suit is a mere continuation of the defendant in the first suit. Plaintiffs are therefore barred from bringing this action against SunAmerica.

Finally, Plaintiffs contend that the settlement agreement and resulting consent judgment were procured by fraud.[3] Southmark, they argue, falsely claimed that it was insolvent, would soon file for bankruptcy protection, and could not afford more than $105,000 in settlement of Plaintiffs' claims. We note that Plaintiffs did not raise the issue of Southmark's alleged fraud in the pleadings below. We usually will not consider arguments addressed for the first time on appeal. *See NLRB v.*

---

[3]Plaintiffs also contend that the purchase of Southmark's assets by SunAmerica was fraudulent. This contention is intended to prove (as is their contention that SunAmerica is a "mere continuation" of Southmark) that SunAmerica is derivatively liable for the torts of Southmark as Southmark's successor corporation. Plaintiffs have, however, already obtained judgment (albeit a consent judgment) against Southmark. Insofar as we have today held that this prior judgment precludes Plaintiffs from relitigating their claims against SunAmerica, we need not address SunAmerica's potential derivative liability.

*Pinkston–Hollar Constr. Servs., Inc.,* 954 F.2d 306 (5th Cir.1992).

We do note, however, that this collateral attack on the validity of the prior judgment is improper. While fraudulent procurement of a prior judgment may indeed preclude the application of res judicata, the party claiming fraud should address this claim to the court which rendered the first judgment. *See* 18 C. Wright, A. Miller & E. Cooper § 4415, at 129; *Restatement (Second) of Judgments* § 78–82 (1981) (discussing preference for proceeding initially in the court which rendered the first judgment); *see also id.* at § 26, comment j (suggesting that the plaintiff who claims that the defendant's fraud or misrepresentation prevented full resolution of that action must apply to the first court for permission to entertain the second action).[4]

## III. CONCLUSION

We hold that Plaintiffs are barred from relitigating these claims based on the principle of res judicata. On this basis, we AFFIRM the district court's award of summary judgment in favor of SunAmerica.

---

[4]Moreover, Plaintiffs may have challenged the propriety of the first judgment through Rule 60(b) of the Federal Rules of Civil Procedure, which provides that "the court may relieve a party ... from a final judgment, order, or proceeding for ... (3) fraud ..., misrepresentation, or other misconduct of an adverse party." *See also* 11 C. Wright, A. Miller & E. Cooper §§ 2851–73; *id.* at § 4415 n. 28 (recommending that claims of fraud concerning the first judgment be brought in the first court by means of Rule 60(b)). Rule 60(b) allows the party seeking relief on grounds of fraud or misrepresentation one year after entry of the judgment or order to file a motion for relief under the Rule. Fed.R.Civ.P. 60(b). Plaintiffs did not file for relief from that judgment or order. We note that this action was filed less than three months following the entry of the consent judgment. Furthermore, claims against Pickens were still pending in the Jackson Division at the time this action was filed.