626 So.2d 127 (1993)
Emmett CHASSANIOL
v.
BANK OF KILMICHAEL.
No. 91-CA-0288.
Supreme Court of Mississippi.
October 28, 1993.
*128 Jas. C. Pierce, Peteet Roberson Gragson Calhoun & Lewis, Greenwood, for appellant.
Charles T. Yoste, Starkville, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr., and SMITH, JJ.
SMITH, Justice, for the court:
The Bank of Kilmichael filed a complaint in the Circuit Court of Montgomery County against Wayne Harrison and Emmett Chassaniol. Harrison had defaulted on a farm loan, and the Bank contended that Chassaniol had sold for Harrison certain crops which were alleged to be securing the loan. Chassaniol timely answered the initial complaint.
When the Bank sought to amend the complaint to include additional parties and to seek punitive damages, Chassaniol filed an opposition to the motion. The court granted the amendment and gave Chassaniol ten days to answer. Chassaniol did not file an answer to the amended complaint within the time specified and the Bank filed for an entry of default with the clerk of the Circuit Court. Upon learning that an Entry of Default had been entered, Chassaniol filed a motion to set aside the entry of Default on the day of the entry by the clerk.
Chassaniol had the case removed to federal court and there filed an answer to the amended complaint. The Bank dismissed its *129 case against Harrison and the case was remanded to the Circuit Court approximately six months after the original removal.
After remand Chassaniol learned that the Bank was still pursuing the default judgment. Chassaniol filed a Motion to Ratify and Allow Answer to the Amended Complaint that had been filed in federal court. At the hearing on January 7, 1991, Chassaniol learned that a Default Judgment had been entered on December 4, 1990, without notice. Chassaniol's motion ore tenus to set aside the default was denied.
The Circuit Court entered a judgment against Chassaniol in the amount of $21,806.71. Chassaniol's motion for Reconsideration and Relief from the Default Judgment was denied at a hearing on March 15, 1991. As a result, Chassaniol brings this appeal and assigns as error the following:
A. Whether the Entry of Default made by the Clerk of Montgomery County Circuit Court (as opposed to the Court) in April 12, 1990, was reversible error?
B. Whether the Default Judgment entered by the Court on December 4, 1990, was reversible error?
C. Whether the Default Judgment entered by the Trial Court on January 28, 1991 was reversible error?
1. Whether the Trial Court committed reversible error in sustaining the Bank of Kilmichael's objection to questioning directed at Rodney Mortimer regarding criminal proceedings as this was already relevant on the issue of damages, if any?
2. Whether the Trial Court committed reversible error in not considering the value of equipment seized by the Bank of Kilmichael to satisfy its note in determining the amount of damages assessed to Chassaniol?
D. Whether the Trial Court's refusal to grant relief under Rule 60(b) of the MRCP was an abuse of discretion and reversible error by the Trial Judge?
What seems abundantly clear is that neither the philosophical nor technical bases of Rule 55 were given proper deference in this case. Entry of a default judgment without notice was error. The lower court judge clearly committed an abuse of discretion in failing to grant relief from the default. For these reasons, this case will be reversed and remanded for consideration on the merits.

THE FACTS
The Bank of Kilmichael made certain farm loans to Wayne Harrison, with the loans secured by farm equipment and implements and also purportedly by crops "growing or to be grown" on certain acreage. After the cotton was harvested and processed Harrison received negotiable warehouse receipts which Harrison sold to Chassaniol, a cotton factor. Chassaniol paid Harrison in two checks totalling $21,806.31 and Chassaniol sold the receipts within a few days and made a profit of less than $300.
Harrison defaulted on the farm loans, and on September 13, 1989 litigation was initiated by the Bank. Chassaniol was also named as a party based on the theory that a valid lien existed in the warehouse receipts. Chassaniol answered on October 11, 1989, and denied the substantive allegations against him. The parties began conducting discovery.
On January 22, 1990, the Bank filed a Motion for Leave to Amend its Complaint along with a copy of the proposed amended complaint. On March 12, 1990, Chassaniol mailed a formal objection to the proposed Amended Complaint, particularly regarding punitive damages. The objection was filed on March 13, 1990. On the same day, March 13, 1990, the lower court entered an order granting the amendment. Chassaniol was not represented at the hearing, if there was one, and the order stated that "the defendant Emmett Chassaniol having been duly noticed and not appearing through counsel." There is nothing in the record suggesting that Chassaniol was in fact given notice except a notice "as soon as counsel can be heard." Chassaniol states in his brief that no hearing was conducted prior to the trial court entering this order.
The order granting the Bank's Motion for Leave to Amend Complaint ordered Chassaniol to file his answer within ten days and gave the two parties added, Ramcat Cotton, Inc. and Lewis Buford, III d/b/a Buford Cotton *130 Company, thirty days in which to answer. Strangely, Wayne Harrison is not mentioned in the order. The amended complaint filed with the clerk on March 14, 1990, stated: "Harrison is in bankruptcy and is no longer a defendant." This was apparently added after the Amended Complaint was initially typed since it is in a different type size than the rest of the document. There is nothing else in the court file to reflect that Harrison was dismissed as a party until six months later on September 14, 1990, when a Stipulation of Dismissal of Harrison was entered, signed in separate documents by the three remaining defendants. At the time these stipulations were filed in Montgomery County Circuit Court, the case had not been remanded from the federal court to which the case had been removed.
On April 12, 1990, the Bank filed its Application to the Clerk for Entry of Default against Chassaniol based on failure to answer the Amended Complaint. On the same day, April 12, Chassaniol prepared and served on the Bank a Motion to Set Aside Entry of Default which was stamped filed by the clerk on April 16, 1990.
On January 22, 1990, Harrison had filed a Chapter 7 bankruptcy case. Based on this, Chassaniol on April 23, 1990, removed the present case to the United States District Court. On May 10, 1990, the Bank filed a motion to remand. On June 29, 1990, the case was referred to Bankruptcy Court. Harrison's bankruptcy case was a "no assets" case, and he received a discharge in bankruptcy. On October 11, 1990, an Order to Remand was signed by the District Judge.
Without notice or hearing, the lower state court entered an Order of Default Judgment on December 4, 1990. On December 12, 1990, Chassaniol filed Defendant's Motion to Ratify and Allow Answer to Amended Complaint. Attached to the motion was a copy of Chassaniol's Separate Answer and Affirmative Defenses of Emmett Chassaniol to Amended Complaint, which according to Chassaniol was filed in the federal court on August 17, 1990.
A hearing was conducted on January 7, 1991, and this hearing was transcribed and made part of the record on appeal. This is the only hearing for which a notice stating the date and time is a part of the record. The court denied Chassaniol's motion to ratify and allow answer to amended complaint and an ore tenus motion to set aside the order of default of December 4, 1990. The court then ordered the amended complaint taken as confessed and entered judgment in the amount of $21,806.71 plus interest. This order was signed on January 28, 1991.
Chassaniol's motion to reconsider was denied by order signed March 27, 1991.
The following is an outline of the pertinent dates:

Complaint filed September 13, 1989
Answer filed by Chassaniol October 13, 1989
Harrison filed Chapter 7 January 22, 1990
Motion for Leave to Amend January 22, 1990
Objection to Amended Complaint March 12, 1990
Order Allowing Amended Complaint March 13, 1990
Motion for Default April 12, 1990
Application for Entry of Default April 12, 1990
Clerk's Entry of Default April 12, 1990
Chassaniol Motion to Set Aside April 16, 1990
Notice and Application to April 23, 1990
Remove to Federal Court
Answer to Amended Complaint filed by September 11, 1990
Chassaniol in Federal Court
Recommendation to Remand August 30, 1990
Stipulation of Dismissal of September 14, 1990
Harrison (Circuit Court)
Order to Remand October 11, 1990
Default Judgment December 4, 1990
Chassaniol Motion to File December 12, 1990
Answer to Amended Complaint
Bank's Notice of Hearing December 20, 1990
for Default Judgment filed
Hearing to Assess Damages Order January 7, 1991
filed Assessing Damages January 31, 1991
Motion to Reconsider February 22, 1991
Notice of Appeal filed March 20, 1991
Order Denying Relief March 27, 1991

DISCUSSION

WHETHER THE ENTRY OF DEFAULT MADE BY THE CLERK OF MONTGOMERY COUNTY WAS REVERSIBLE ERROR?
The Bank contends the fact that the clerk entered a default against Chassaniol is "of no consequence and immaterial to the judgment against Chassaniol." The Bank's argument is that because Chassaniol was given notice *131 of the hearing on damages held on January 11, 1991, and was present at that hearing that everything else does not matter.
Contrary to the Bank's argument, the role of the clerk is not merely perfunctory. Official Comment to Rule 55. The entry of the clerk is a necessary step preceding a default judgment, but does not limit the power of the court to enter a default judgment. As the Official Comment to Rule 55 notes: "Prior to obtaining a default judgment, Rule 55(b), there must be an entry of default as provided by Rule 55(a). An entry of default may be made by the clerk only with regard to a claim for affirmative relief against a party who has failed to plead or otherwise defend... ." This places an affirmative duty on the clerk to examine the affidavits filed and see if the requirements of Rule 55(a) have been met.
In Wheat v. Eakin, 491 So.2d 523 (Miss. 1986), this Court held that the clerk was in error in entering default where a handwritten response to the complaint was filed containing frank language. The Court said, "Entry of default by the clerk should only be in the absence of any response by the defending party." Id. at 525. This case clearly states that once a party has indicated a defense or denied the allegations, only "the court... is the proper party to enter the default." Id.
In the present case, the clerk was given a supporting affidavit which would ordinarily support the entry of default. Chassaniol did not file a response to the Amended Complaint in the time specified in the order of the court, but had previously filed an answer and objection to the amended complaint stating the reasons. Under the Wheat decision, the entry of the default by the clerk could be considered error. The determination should have been left to the court as to whether the default was appropriate. However, Chassaniol did not pursue the motion to set aside the entry of default, which would have been the appropriate procedural remedy to question the clerk's entry of default. Having failed to pursue the remedy under Rule 55(c), Chassaniol cannot be afforded relief solely based on the clerk's action.

WHETHER THE DEFAULT JUDGMENT ENTERED BY THE COURT ON DECEMBER 4, 1990 WAS REVERSIBLE ERROR?
After the Entry of Default was entered by the clerk on April 12, 1990, the defendant Chassaniol filed a Motion to Set Aside Entry of Default with the Circuit Court of Montgomery County. This motion was signed and sent to counsel opposite on April 12, 1990 and filed with the clerk on April 16, 1990. This motion was never brought to hearing, but is a part of the court file. On or about April 23, 1990, Chassaniol filed his Notice and Application of Removal to Federal Court based on the bankruptcy of Wayne Harrison. Chassaniol contends that while in the jurisdiction of the federal court he filed an answer to the Amended Complaint. The case was remanded to the state court by order dated October 19, 1990. Prior to the case being in the jurisdiction of the Circuit Court of Montgomery County, the Bank filed three Stipulations of Dismissal on September 14, 1990. Each of the remaining three parties agreed to the dismissal of Harrison as a defendant.
After the documents from the federal court remanding the case, the next document in the court papers is the Order of Default Judgment entered on December 4, 1990. This order was entered without hearing or notice. Rule 55(b) clearly, unmistakably and unequivocally states:
If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application ...
The Rule requires a three day notice and contemplates that a hearing will be held when a party has made an appearance. Both the court and opposing counsel were on notice by virtue of the documents in the court file that Chassaniol was contesting every element of the Bank's case and was contesting the entry of default by the clerk. Chassaniol filed an answer to the original complaint, filed an objection to the amended complaint, filed a motion to set aside the entry of default, *132 pursued the case in federal court, and filed an answer to the amended complaint while in federal court.
The Rule does not contemplate an intermediate step such as the order of default which does not also award damages. The Comment notes: "Damages must be fixed before an entry of default can become a default judgment and there is no estoppel by judgment until the judgment by default has been entered."
The Bank tells us that the December 4, 1990, order "is of no consequence" because it is "only an entry of default by the Court and final default judgment was not entered by the Court until the properly noticed hearing on January 7, 1991, wherein damages were assessed against Chassaniol." As previously noted, the entry of default by the clerk is not a limitation on the court's power to do the same. What is not clear is what prompted the court to do this. The document is clearly titled "ORDER OF DEFAULT JUDGMENT," and not Entry of Default. This argument by the Bank is inconsistent with the argument in lower court. Counsel indicated that he forwarded the order to the court for signature. Looking at the document itself, it is of the same format as all documents prepared by the counsel for the Bank.
If this is an Entry of Default, as the Bank claims, then it is unnecessary. Since this document was prepared by and submitted to the court by the Bank, there is no reason for it to be incorrectly titled. An Entry of Default was already entered by the clerk on April 12, 1990. If it is an Order of Default Judgment, then it is procedurally flawed in several ways. It does not assess damages as is required, but more importantly, the notice requirements of the Rule were not adhered to. Three days notice is mandatory and was not given. No hearing was held prior to the entry of default judgment, and Chassaniol was not present or given any notice that the order would be entered. It was not until the hearing on January 7, more than a month later, that Chassaniol found out that the order was entered. The subsequent hearing makes clear that Chassaniol was never given notice that this order had been entered, much less that it was contemplated.
By having this order of judgment entered, the Bank effectively foreclosed the discussion of whether default was proper and limited the later, noticed hearing to the question of damages. This was effective strategy, but a clear violation of the Rules of Procedure. The Official Comment to Rule 55 sets out the reason why notice is important:
When a judgment by default is entered, it is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and given the same effect as a judgment rendered after a trial on the merits... .
The ability of the court to exercise its discretion and refuse to enter a default judgment is made effective by the two requirements in Rule 55(b) that an application must be presented to the court for the entry of judgment and that notice of the application must be sent to the defaulting party if he has appeared. The later requirement enables the defaulting party to show cause to the court why a default judgment should not be entered or why the requested relief should not be granted. A party's failure to appear or be represented at any stage of the proceedings following an initial appearance does not affect this notice requirement. Service of the notice must be made at least three days before the hearing on the application, and must afford the party an opportunity to appear at the hearing. The purpose of this portion of Rule 55(b) is simple: It is intended to protect those parties who, although delaying in a formal sense by failing to file pleadings within the thirty day period, have otherwise indicated to the moving party a clear purpose to defend the suit... .
Chassaniol clearly evidenced every intention of defending the suit. To deny him the opportunity to appear and show cause to the court why the default should not be entered deprived him of the protection built into the Rules. This order was clearly erroneous and this case will be reversed.

WHETHER THE DEFAULT JUDGMENT ENTERED BY THE TRIAL *133 COURT ON JANUARY 28, 1991 WAS REVERSIBLE ERROR?
1. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN SUSTAINING THE BANK OF KILMICHAEL'S OBJECTION TO QUESTIONING DIRECTED AT RODNEY MORTIMER REGARDING CRIMINAL PROCEEDINGS AS THIS WAS ALREADY RELEVANT ON THE ISSUE OF DAMAGES, IF ANY?
2. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT CONSIDERING THE VALUE OF EQUIPMENT SEIZED BY THE BANK OF KILMICHAEL TO SATISFY ITS NOTE IN DETERMINING THE AMOUNT OF DAMAGES ASSESSED TO CHASSANIOL?
Chassaniol argues that at the hearing to determine damages he was precluded from showing that the Bank was pursuing criminal charges against Harrison and would likely collect the judgment amount in that proceeding. Second, Chassaniol contends that the value of equipment recovered from Harrison was not considered in assessing damages.
The full amount of the note from Harrison was $40,309.40. Of this, the Bank was only seeking from Chassaniol the sum of the two checks paid to Harrison by Chassaniol or $21,806.71.
Rodney Mortimer, president of the Bank of Kilmichael, was cross examined by defense counsel on the efforts to collect on the note from Harrison. When counsel asked, "Have you had any discussion with the sheriff?" an objection was raised and sustained by the court. The court invited counsel to explain the relevancy, but no explanation or argument was offered. Chassaniol's counsel did not further pursue this line of argument through other witnesses or evidence.
As a part of record excerpts, Chassaniol included a judgment from the Circuit Court of Montgomery County in the case State of Mississippi v. Wayne B. Harrison, Cause No. 6802, dated April 17, 1991. The Bank has filed a Motion to Strike. In the judgment, which was entered after this case was appealed, Wayne Harrison entered a plea of guilty to "the felony crime of SELLING PROPERTY PREVIOUSLY ENCUMBERED." Harrison was sentenced to six years with five years suspended and restitution of $15,124.33 and $6,682.38 or a total of $21,806.71 to be paid to the Bank of Kilmichael. This is, of course, the same amount that Chassaniol is to pay under this default judgment. The Bank has the potential to twice recover.
The Bank is technically correct that the judgment should not be a part of this appeal solely by Chassaniol including it in the record excerpts. Chassaniol could have by motion sought to supplement the record pursuant to Supreme Court Rule 10(e). Such a motion would not have been looked on favorably since this judgment is outside the case sub judice. The argument that this document supports was never fully developed in the lower court. Setting aside all this, the judgment is clearly evidence that the Bank acted inconsistently in seeking the recovery of the same loss in both criminal and civil cases before different judges. Clearly, this information would have been relevant if Chassaniol's attorney had properly presented it as proof. Not surprisingly, the criminal proceeding only occurred after the present case was concluded so that Chassaniol was foreclosed from doing this.
In the second issue argued, Chassaniol contends that the value of equipment repossessed from Harrison was not taken into consideration in determining damages. Like the previous assigned error, this was not developed in the testimony presented. As the Bank states, Chassaniol did not develop testimony from the Bank president to support this argument and offered no alternative or additional support. Whatever merit this issue may have had was not presented for consideration by the lower court and cannot now be argued as error. The Bank, however, in arguing this position raises some erroneous points. As in the previous situation, the Bank takes the position that the amount due from Chassaniol is in addition to that owed by Harrison. The Bank is in error. They are only entitled to one recovery of their loss. Harrison is the party in *134 debt to the Bank, and Chassaniol is only liable, if at all, should Harrison not repay.
Because Chassaniol did not pursue or preserve these issues they cannot be the basis of reversal.

D. WHETHER THE TRIAL COURT'S REFUSAL TO GRANT RELIEF UNDER RULE 60(b) OF THE MRCP WAS AN ABUSE OF DISCRETION AND REVERSIBLE ERROR BY THE TRIAL JUDGE?
In looking at the court's refusal to set aside the default judgment there are two rules to be considered. Rule 55(c) authorizes the court to vacate an entry of default "for good cause shown." Rule 60(b) provides that relief from a final judgment may be granted if "it is no longer equitable that the judgment should have prospective application ... [and] any other reason justifying relief from the judgment." Obviously, the burden under Rule 60(b) is the harder for the proponent.
In the present case, Chassaniol filed a motion which would have been heard under Rule 55(c), but this motion was never brought up for hearing. The Motion to Set Aside Entry of Default was filed on April 16, 1990, and Chassaniol removed the case to federal court shortly thereafter. In the motion Chassaniol stated that he had "consistently and adamantly denied by previously filed pleadings, any liability or damages... ." Chassaniol also noted that the entry of default was largely technical. Chassaniol has not raised Rule 55(c) largely due to his own failure to pursue the point in the lower court. The Bank, it should be noted, also failed to seek a default judgment the entire time the case was in federal court and on remand caused a default judgment to be entered which was clearly procedurally erroneous.
This Court has articulated a three-pronged balancing test which the trial court should use in determining whether to grant relief from judgment under MRCP 60(b), which has been stated as follows:
(1) The nature and legitimacy of the defendant's reasons for his default, i.e., whether the defendant has good cause for default;
(2) whether the defendant in fact has a colorable defense to the merits of the claim, and
(3) the nature and extent of prejudice which may be suffered by the plaintiff if the default is set aside.
Sartain v. White, 588 So.2d 204, 211 (Miss. 1991); Johnson v. Weston Lumber & Building Supply, 566 So.2d 466, 468 (Miss. 1990); H & W Transfer and Cartage Service, 511 So.2d 895 (Miss. 1987); Rich By and Through Brown v. Nevels, 578 So.2d 609 (Miss. 1991); King v. King, 556 So.2d 716 (Miss. 1990).
Chassaniol has never clearly explained why the amended complaint was not formally answered within the ten day period. All the components of the answer were already in pleadings served on the plaintiff Bank and filed with the court clerk. Counsel for Chassaniol testified that perhaps it was "by mistake in the sense that we had felt that we had answered all of the relevant allegations that were contained in the original complaint that was duplicated in the amended complaint." Chassaniol's counsel indicated that because the case was being removed to federal court and had been substantially answered they did not answer within the ten days.
The second consideration is the strongest in Chassaniol's favor. There are questions as to whether the Bank perfected a security interest in the negotiable warehouse receipts of Harrison. The Bank argues to the contrary and states that no evidence was presented at the hearing on March 12, 1991. The transcript of this hearing is not a part of the record and consequently this argument is unsupported. However, the affidavit of Chassaniol's counsel filed before this hearing sets out its defenses. Chassaniol contended that the Bank's security interest was only in farm crops "growing or to be grown" and not in inventory represented by warehouse receipts; alternatively, the security instrument, by virtue of various omissions, was defective; and the debt is due from Harrison and the Bank seized and disposed of their collateral and has not revealed whether the proceeds covered the debt. As previously noted, the two arguments raised in the previous assignment are also potentially of some merit and *135 warrant consideration by the lower court. There are many gaps in the proceedings and questions which cannot be adequately resolved on the record before this Court that a trial on the merits could and should resolve.
The prejudice to the plaintiff would be slight. The Bank was fully aware of Chassaniol's contentions and defenses throughout the whole time it was proceeding with discovery. Indeed, the whole case was allowed to proceed with removal to federal court and on remand to the lower court as if the default did not exist. Apparently, at no time did the plaintiff Bank raise the issue during the federal proceedings or advise Chassaniol that it would continue to proceed with the default on remand.
Default judgments are never favored and relief should be granted when there is a showing within the rules. Guaranty National Insurance Co. v. Pittman, 501 So.2d 377, 387-388 (Miss. 1987). The determination whether to vacate such a judgment is addressed to the discretion of the trial court. Bailey v. Georgia Cotton Goods Co., 543 So.2d 180 (Miss. 1989); Bryant, Inc. v. Walter, 493 So.2d 933, 936-937 (Miss. 1986). While the trial court has considerable discretion, this discretion is neither "unfettered" nor is it "boundless." Cannon v. Cannon, 571 So.2d 976 (Miss. 1990). Because "courts universally favor trial on the merits, slight abuse of discretion in refusing to set aside a default judgment is sufficient to justify reversal of the order." Rios Bridoux v. Eastern Air Lines, 214 F.2d 207, 210 (D.C. Cir.1954).
The history of these proceedings indicates that this case should be tried on the merits. The trial court abused its discretion in not granting relief from the judgment.
The hearing granting the amended complaint was held without Chassaniol and, based on the record, without proper notice to Chassaniol. Although Chassaniol did not file an answer to the amended complaint, the Bank was fully aware of what Chassaniol's response would be based on the response to the original complaint and the objection to the amendment. Chassaniol was allowed to proceed in federal court without the Bank raising the default issue and filed an answer in federal court which apparently was not objected to by the Bank. Only after remand did the Bank cause a default judgment to be entered, without notice to Chassaniol. The Bank agreed to dismiss Wayne Harrison as a party without pursuing its claims in bankruptcy court and proceeded to pursue a recovery in criminal proceedings of the same monies it sought from Chassaniol. The Bank's contractual relationship was with Harrison, not Chassaniol.

CONCLUSION
Chassaniol has raised enough legitimate questions about the overall conduct of the default judgment in the lower court that the case will be reversed and remanded for a trial on the merits. After having caused an entry of default to be entered by the clerk, the Bank apparently never pursued this question further while the case was in federal court and allowed Chassaniol to continue as if the matter had been dropped. After remand, the Bank had the court enter a default judgment without notice in clear violation of the Rules of Procedure. Given the many irregularities in the overall handling of this case, the lower court should have granted relief from the default judgment and failure to do so was an abuse of discretion. Chassaniol, while technically failing to answer the amended complaint within the prescribed time, did not evidence any intent of abandoning his opposition to the Bank's claims. The Bank's failure to act consistently in its handling of Chassaniol and Harrison also raises doubts as to the merits of the Bank's claims as well as its methods. For these reasons, this case is reversed and remanded for a trial on the merits.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.