# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00493-SCT

*LEATHA HOGAN, ADMINISTRATRIX OF THE*
*ESTATE OF QUINTON CORTEZ HOGAN,*
*DECEASED*

*v.*

*RANDY LAMONT BUCKINGHAM, A MINOR, BY*
*AND THROUGH HIS GUARDIAN, CHIQUITA*
*BUCKINGHAM; AND ASHLEY K. HINTON, A*
*MINOR, BY AND THROUGH HER GUARDIAN,*
*ANNELYETTE HINTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/97 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ELLIS TURNAGE |
| ATTORNEY FOR APPELLEES: | J. PEYTON RANDOLPH, II |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 9/17/98 |
| MOTION FOR REHEARING FILED: | 9/28/98 |
| MANDATE ISSUED: | 11/30/98 |

**BEFORE PRATHER, C.J., BANKS AND SMITH, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This wrongful death action brings before this Court the issues of whether the doctrines of res judicata and collateral estoppel preclude a party from obtaining blood and DNA tests to contest the findings of a prior adjudication of paternity even though the party was not involved in the prior proceedings and whether, irrespective of the issues of res judicata and collateral estoppel, Mississippi's statute controlling descent and distribution prevent the attack of a prior adjudication of paternity. We conclude that the doctrines of res judicata and collateral estoppel do not bind a party who had no connection to the prior paternity actions to the judgment therein rendered. Nevertheless, we conclude that the fact of adjudication controls under our statutes of descent and distribution. Therefore the judgment of the lower court is affirmed.

**I.**

¶2. Leatha Hogan, plaintiff/appellant in the present case, is the natural mother of Quinton Cortez Hogan, deceased. Jerry Lee Quinn is Quinton's natural father. On the afternoon of July 29, 1992, Quinton fell into an open drainage sewer and was swept into the storm drainage system by a strong current and drowned.

¶3. On December 30, 1994, the Monroe County Chancery Court entered an order directing that letters of administration be granted to the deceased child's mother, Ms. Hogan, as administratrix of the child's estate. A wrongful death lawsuit was filed by Ms. Hogan in the Circuit Court of Monroe County against the City of Aberdeen, the Aberdeen Housing Authority and Continental Engineering Services, Inc.

¶4. A confidential settlement was thereafter proposed by the defendants in the wrongful death action. The proposed settlement was conditioned upon the chancery court's entry of a decree determining the heirs at law and wrongful death beneficiaries of Quinton Cortez Hogan, and authorizing the estate to settle the claim and dismiss the circuit court action. On September 16, 1996, Ms. Hogan filed a Motion for Blood and DNA Testing in chancery court. Ms. Hogan sought to establish the paternity of two other children, Randy Lamont Buckingham and Ashley K. Hinton, who were alleged to be the natural children of Jerry Lee Quinn. If these allegations were true, Randy and Ashley would be half-blood siblings of Quinton and would be entitled to a proportionate share in his estate. On September 18, 1996, Ms. Hogan filed a Petition for Determination of Heirship and Wrongful Death Beneficiaries and Adjudication of Paternity naming Quinn, Randy and Ashley as interested parties.

¶5. By Opinion and Judgment of the Court entered October 22, 1996, the chancellor denied Ms. Hogan's motion for blood and DNA tests. The court found that orders had been issued in two prior paternity proceedings brought by the Monroe County Department of Human Services, establishing that Jerry Quinn was the natural father of both Randy and Ashley. In both cases the judgments against Jerry Quinn were by default, and no blood or DNA tests were ever performed to conclusively establish paternity. The court ruled that both matters were res judicata and that Ms. Hogan lacked standing to challenge these prior orders of paternity.

¶6. On November 7, 1996, the court entered its decree determining that Quinton's heirs at law and wrongful death beneficiaries were: (1) Leatha Hogan, mother; (2) Jerry Lee Quinn, father; (3) Ashley Hinton, sister; and (4) Randy Buckingham, brother. On December 16, 1996, the court granted Ms. Hogan authority to settle the wrongful death claim for an undisclosed amount of money. Pursuant to the terms of the final decree of March 21, 1997, the shares of the wrongful death proceeds belonging to Randy and Ashley were deposited with the Monroe County Chancery Clerk in an interest-bearing account pending appeal. On April 11, 1997, Ms. Hogan timely filed notice of appeal.

## II.

### a.

¶7. Ms. Hogan argues that the chancellor erred in holding that the doctrine of res judicata precluded Ms. Hogan from obtaining blood and DNA tests in the present case because of the prior default judgments against Jerry Quinn in the two paternity cases adjudicating him the natural father of Randy and Ashley. Ms. Hogan maintains that since neither she nor the estate was a party to the prior proceedings they are not bound by the results.

¶8. The appellees, Randy and Ashley, concede that to the extent the chancellor's decision is grounded solely upon the common law doctrine of res judicata, the basis for the decision is "questionable." The requirements for res judicata, as well as the related doctrine of collateral estoppel, are found in *Dunaway v. W.H. Hopper & Assocs.,* 422 So. 2d 749 (Miss. 1982).

¶9. "Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made." *Id.* at 751; *See also City of Jackson v. Lakeland Lounge of Jackson, Inc.,* 688 So. 2d 742, 748 (Miss. 1996); *Norman v. Bucklew,* 684 So. 2d 1246, 1253 (Miss. 1996); *Mississippi Employment Sec. Comm'n v. Georgia-Pacific Corp.,* 394 So. 2d 299, 301 (Miss. 1981) ; *Cowan v. Gulf City Fisheries, Inc.,* 381 So. 2d 158, 162 (Miss. 1980). If these four identities are present, the parties will be prevented from relitigating all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit.

¶10. While the requirements of res judicata and collateral estoppel are not identical, the application of collateral estoppel also requires an identity of parties. *See Bucklew,* 684 So. 2d at 1254 ("[w]hen collateral estoppel is applicable, the parties will be precluded from relitigating a specific issue [1] actually litigated, [2] determined by, and [3] essential to the judgement in a former action, even though a different cause of action is the subject of the subsequent action") (quoting *Hollis v. Hollis*, 650 So. 2d 1371, 1377 (Miss. 1995)). At its core, the rule of collateral estoppel "precludes parties from relitigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity." *State ex rel. Moore v. Molpus,* 578 So. 2d 624, 640 (Miss. 1991).

¶11. As this Court has repeatedly stated, strict identity of parties is not necessary for either res judicata or collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action. *See e.g., McIntosh v. Johnson,* 649 So. 2d 190, 193-94 (Miss. 1995) overruled on other grounds by *Norman v. Bucklew*, 684 So. 2d 1246 (Miss. 1996); *Johnson v. Howell,* 592 So. 2d 998, 1002 (Miss. 1991); *Walton v. Bourgeois,* 512 So. 2d 698, 701 (Miss. 1987). It must be remembered, however, that Mississippi follows the general rule that parties must be substantially identical for res judicata to apply. *Cherry v. Anthony, Gibbs, Sage,* 501 So. 2d 416, 418 (Miss. 1987). Thus, "'[p]rivity' is. . . a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified.'" *Little v. V & G Welding Supply, Inc.,* 704 So. 2d 1336, 1339 (Miss. 1997) (quoting *Russell v. SunAmerica Sec.,* 962 F.2d 1169, 1173 (5th Cir. 1992)). In *V & G Welding,* this Court quoted the following passage with approval:

> Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The statement that a person is bound. . . as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by. . . all or some of the rules of res judicata by way of merger, bar or collateral estoppel.

*Id.* (quoting Restatement of Judgments § 83 cmt. (1942)).

¶12. There is no privity between Ms. Hogan and any of the parties to the prior action. As the chancellor pointed out, Ms. Hogan lacked standing to contest the prior orders of paternity. Ms. Hogan could not have been a party to those prior paternity suits even if she had wanted to, as the statute which controls paternity actions expressly limits standing to bring such suits to "the mother, or father, the child or any public authority chargeable by law with the support of the child." Miss. Code Ann. § 93-9-9(1) (1994).

¶13. The paternity actions were personal to the mothers of Randy and Ashley. They were proceedings to determine whether Jerry Quinn had a duty to support the children, and were wholly separate and distinct from the estate proceedings. Ms. Hogan had no proprietary or financial interest in the prior actions. She had no lawful interest in or legal title to the claim on which the Department of Human Services was suing, and no control over the suit. Therefore, Ms. Hogan, either individually or as administratrix of Quinton's estate, had no connection to the prior paternity actions and she cannot be bound, under the doctrines of res judicata or collateral estoppel, by the judgment therein rendered. *See, e.g., **Cherry**,* 501 So. 2d at 418.

### b.

¶14. Although the common law doctrines of res judicata and collateral estoppel may not bind Ms. Hogan individually or as the administratrix of Quinton's estate, Appellees Randy and Ashley argue that the chancellor's ruling must nevertheless be affirmed. They argue that the chancellor correctly denied plaintiff's motion for blood and DNA tests, as defendants are heirs of Quinton Cortez Hogan as a matter of law under Miss. Code Ann. § 91-1-15, and plaintiff has no standing to challenge prior adjudications of paternity. In ***Love v. Barnett***, it was held that where the chancellor reaches a correct result in accordance with the law and facts, this Court will affirm even though the wrong reason was cited for that result. ***Love v. Barnett***, 611 So. 2d 205, 207 (Miss. 1992) (citing ***Tedford v. Dempsey***, 437 So. 2d 410, 418 (Miss. 1983)).

¶15. Randy and Ashley observe that the chancellor cited two reasons for his determination that blood tests were inappropriate: that prior adjudications of paternity as to the person whose paternity was challenged operated as res judicata against Ms. Hogan, and that Ms. Hogan lacked standing to contest the orders of paternity. Randy and Ashley argue that the "[p]laintiff asserts error largely as a result of the first determination (res judicata), but fails to adequately explore the statutory and case law surrounding the broader issue of whether an administratrix may challenge paternity of illegitimates when that paternity has been determined in a prior action."

¶16. Ms. Hogan's position is that the present suit is controlled by Miss. Code Ann. § 93-9-21(1). That subsection provides in part:

> The court, on its own motion or on motion of the plaintiff or the defendant, shall order the mother, the alleged father and the child or children to submit to blood tests and any other tests which reasonably prove or disprove the probability of paternity.

Miss. Code Ann. § 93-9-21(1) (1994). Ms. Hogan contends that this statute makes clear that upon the filing of a motion by either party for an order requesting blood tests or other tests, the trial court must grant the motion; no discretion is afforded the trial judge.

¶17. Ms. Hogan also cites *In re Estate of Stowers*, 678 So. 2d 660 (Miss. 1996). In that case, Rodney Stowers died intestate from injuries sustained in a football game. Stowers' mother, Delie Mae Shepard, was appointed administratrix of his estate. Thereafter, Kierra Jones, an alleged illegitimate child of Stowers, filed through her mother and next friend a Petition for Determination of Heirship and Adjudication of Paternity. Shepard denied that Kierra was the child of the decedent, and moved to have the decedent's body exhumed for blood and DNA tests. The chancellor denied Shepard's motion for paternity testing. *Id.* at 661. This Court reversed, relying upon Miss. Code Ann. § 93-9-21(1) and *Ivy v. Harrington,* 644 So. 2d 1218 (Miss. 1994), a case interpreting that subsection. *Stowers,* 678 So. 2d at 662. The *Stowers* Court concluded that the mandatory language of § 93-9-21(1) clearly provided that "'the trial court must order blood tests if requested by any party to a paternity action.'" *Id.* (quoting *Ivy,* 644 So. 2d at 1223).

¶18. Randy and Ashley insist, however, that the present proceeding is not a paternity action but rather one to determine heirship. Thus, they argue that § 93-9-21 is inapplicable here, and that the matter is controlled instead by the statutory scheme relating to descent and distribution, Miss. Code Ann. § 91-1-1 *et. seq.* (1994).

¶19. Randy and Ashley distinguish *Stowers* on two grounds. First, they agree with the chancellor that the case is inapplicable here because in *Stowers* "no previous orders of paternity had been entered establishing paternity in any child in that case as has occurred in this present instance." Second, they contend that unlike the present case, *Stowers* involved both an action to determine heirship and an action to adjudicate paternity. The reason the mother was able to bring the paternity action in *Stowers* was that the statute which grants standing to bring paternity suits specifically limits that right to "the mother, or father, the child, or any public authority chargeable by law with the support of the child." Miss. Code Ann. § 93-9-9(1) (1994).[1] Here, argue Randy and Ashley, the statute requiring blood tests and other tests is inapplicable because the matter is purely an action to determine heirship.

¶20. As an action to determine heirship, the matter is instead controlled by Miss. Code Ann. § 91-1-15(3)(b) which provides:

> An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if: . . .
>
> (b) There has been an adjudication of paternity or legitimacy before the death of the intestate; . . .

Miss. Code Ann. § 91-1-15(3)(b) (1994). Randy and Ashley correctly contend that since all parties agree that there has been adjudication of paternity or legitimacy before the death of the intestate as to both of them, § 91-1-15(3)(b) applies and they are entitled to inherit through their father, Jerry Lee Quinn.

¶21. While the equities of the present circumstances are less than gratifying, the language of § 91-1-15(3)(b) makes clear that an illegitimate inherits from the kindred of his natural father where, as in the present case, there has been a prior adjudication of paternity. Moreover, the fact that the judgment against Jerry Quinn was by default is of no consequence. "When a judgment by default is entered, it is treated as a conclusive and final adjudication of the issues necessary to justify the relief

awarded and is given the same effect as a judgment rendered after a trial on the merits." Miss. R. Civ. P. 55 cmt.; *See also **Chassaniol v. Bank of Kilmichael,*** 626 So. 2d 127, 132 (Miss. 1993); ***Rush v. North American Van Lines, Inc.,*** 608 So. 2d 1205, 1209 (Miss. 1992); ***Martin v. Armstrong,*** 350 So. 2d 1353, 1356 (Miss. 1977). Therefore, the chancellor did not err in denying the blood and DNA tests, since the defendants had already been determined to be the heirs of Quinton Cortez Hogan as a matter of law.

## III.

¶22. For the foregoing reasons the judgment of the chancery court is affirmed.

¶23. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. As to the isolated issue of standing, it should be clarified that while § 93-9-9(1) prohibits Ms. Hogan from *bringing* a paternity suit regarding Randy and Ashley, she is not necessarily prohibited from *contesting* the paternity of those who claim to be related to her natural child, Quinton. As administratrix of Quinton's estate, Ms. Hogan clearly has a duty to protect the assets of the estate. ***Stowers,*** 678 So. 2d at 662; ***Deposit Guar. Nat'l Bank v. McBeath,*** 204 So. 2d 863, 865 (Miss. 1967). Had there been no prior adjudication of paternity Ms. Hogan would clearly have standing to question the two other children's relationship to her own deceased child. The issue in the present case, therefore, is not one of standing to contest paternity but rather whether the prior default judgment establishing Jerry Quinn as the father of Randy and Ashley binds the estate pursuant to the plain language of Miss. Code Ann. § 91-1-15(3)(b) (1994).