# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-02284-SCT

*CITY OF JACKSON*

*v.*

*LYNDA KEY PRESLEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2004 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHELLE LYNN McKENZIE |
| | DONNA BROWN JACOBS |
| | LEANN W. NEALEY |
| | PIETER JOHN TEEUWISSEN |
| ATTORNEYS FOR APPELLEE: | ROBERT P. MYERS, JR. |
| | JOE SAM OWEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 11/16/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    Prior to the commencement of a bench trial conducted pursuant to the Mississippi Tort Claims Act, the trial judge, without any request from the plaintiff's counsel, sua sponte entered a default judgment as to liability against the City of Jackson and proceeded to conduct a hearing as to damages only.  At the conclusion of the one-day bench trial of this personal injury action, the trial judge entered a final judgment against the City of Jackson and in favor of Lynda Key Presley, awarding Presley damages in the sum of $219,763.63.  From this final judgment,

the City of Jackson has appealed to us. Finding that the trial judge abused her discretion and committed reversible error in sua sponte entering a default judgment as to liability on the day of trial, we reverse the trial court's final judgment and remand this case to the Circuit Court for the First Judicial District of Hinds County for a new trial consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On May 8, 1998, Lynda Key Presley, of Saucier, Harrison County, Mississippi, was involved in an automobile accident on Highway 15 south of New Albany, in Union County. Fortunately, Presley's personal injuries were relatively minor, as was the property damage to her vehicle.[1]

¶3.     However, unfortunately for Presley, she was involved in yet another vehicular accident only twelve days later, on May 20, 1998, while traveling on the city streets of Jackson.  As Presley traveled in the left-hand (southern-most) west-bound lane of Woodrow Wilson Boulevard, she entered the intersection at Livingston Road, having the right-of-way due to a green light.[2]   Traveling beside Presley's pickup truck in the same direction in the right-hand lane was a larger truck, and suddenly, a City of Jackson police car driven by officer Miranda Morton collided with Presley's vehicle, causing her vehicle to roll over several times.[3]   This

---

[1] Due to this accident, Presley commenced suit against the truck driver and the trucking company in the Circuit Court of Union County, and she eventually settled this litigation for the sum of $3,500.

[2] The record reveals that this area of Woodrow Wilson Boulevard is commonly known as "Five Points Intersection."

[3] Since the trial judge sua sponte entered a default judgment as to liability against the defendants and in favor of Presley, we know very little about the facts of the case, other than

2

time Presley's injuries were much more severe, and the damages she suffered unquestionably much greater than those suffered due to the first accident only twelve days earlier in Union County.

¶4.    As a result of this second accident, Presley commenced her lawsuit under the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 et seq., on May 19, 1999, by filing a complaint against the City of Jackson and officer Miranda Morton in the Circuit Court for the First Judicial District of Hinds County.[4]    The City timely responded to Presley's complaint by denying the material allegations of the complaint and by asserting numerous affirmative defenses.    On June 16, 2000, the trial court entered an agreed order granting Presley leave to file an amended complaint, and a few days later, the amended complaint was filed.    The only difference between the complaint and the amended complaint was an additional sentence asserting a claim for property damage.    The City unquestionably failed to timely respond to this properly filed amended complaint; however, all parties continued on the course of discovery for over four years after the filing of the amended complaint.    The trial court sua sponte entered an order referring this case to mediation.

---

through interrogatory responses, the pretrial order, and Presley's brief trial testimony about the facts of the accident.    Of course, we have the allegations of the defendants' negligence contained in Presley's complaint and amended complaint.    Again, because the issue at trial had been limited to the issue of damages by the trial judge, Presley understandably spent most of her time on the witness stand testifying about her injuries and damages.

[4]For the sake of clarity in discussion, unless otherwise necessary to separately identify the defendants, we will collectively refer to the defendants, the City of Jackson and Officer Miranda Morton, as "the City."

3

¶5.     With mediation eventually proving unsuccessful, the parties continued discovery and worked toward an eventual trial date of August 25, 2004.  As the trial date drew closer, the City, on August 5, 2004 (and over four years late), suddenly filed an answer and affirmative defenses to the amended complaint. By the day of trial, there were various outstanding motions, and the trial court entered a pretrial order which had been jointly submitted by Presley and the City.  This pretrial order provided, inter alia, that "[t]he pleadings are amended to conform to this pretrial order."  One of the outstanding motions was Presley's motion to strike, as untimely filed, the City's answer and affirmative defenses to the amended complaint. This motion contained no request for relief from the trial court other than striking the late answer as untimely filed.  After hearing arguments on this motion, the trial judge granted Presley's motion to strike this untimely filed answer and, without any request from Presley, the trial court likewise, sua sponte, entered a default judgment as to liability and announced to the parties that it would conduct a bench trial only on the issue of damages.  At the conclusion of the bench trial, the trial judge took this matter under advisement, and on October, 26, 2004, the trial judge entered an eight-page memorandum opinion.  On November 4, 2004, the trial judge entered a final judgment consistent with the memorandum opinion awarding Presley the sum of $219,763.63 against the City of Jackson, as well as legal interest and costs.[5]  The City of Jackson timely appealed to us from the entry of the final judgment.

---

[5]The trial court stated in its judgment that, pursuant to the MTCA, Officer Miranda Morton was not personally liable; therefore, judgment was entered only against the City of Jackson, who is thus the sole appellant on appeal.

4

**DISCUSSION**

¶6.     The City of Jackson raises four main issues on appeal, along with numerous sub-issues. We restate these main issues to be: (1) Whether the trial court abused its discretion in striking the City's untimely answer to the amended complaint; (2) Whether the trial court abused its discretion when it entered a default judgment as to liability on the day of trial due to the City's untimely answer to the amended complaint; (3) Whether the trial court abused its discretion by denying the City an opportunity to pursue discovery concerning Presley's damages incurred due to the first vehicular accident occurring only twelve days before the subject accident; and, (4) Whether the trial court committed reversible errors during the bench trial on the issue of damages.   Finding the first two issues dispositive, we will combine these issues and restate the issue for the sake of clarity in our discussion.

### WHETHER THE TRIAL COURT ERRED BY STRIKING THE CITY'S UNTIMELY ANSWER AND SUA SPONTE ENTERING A DEFAULT JUDGMENT AS TO LIABILITY AGAINST THE CITY

¶7.     On the day of trial, the trial court was confronted with several motions, including Presley's motion to strike the City's undeniably late answer and affirmative defenses to Presley's amended complaint.   The deadlines for the filing of various pleadings and motions in civil cases are governed, inter alia, by our rules of civil procedure, uniform rules, statutes, and trial court orders, such as the pre-trial order entered in this case.   Also, we have stated:

> Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere

5

to the provisions of these orders, they should be prepared to do so at their own peril.

*Bowie v. Montfort Jones Mem'l Hosp.*, 861 So.2d 1037, 1042 (Miss. 2003). Thus, we will review the trial judge's striking of the City's four-year late answer and affirmative defenses to the amended complaint applying an abuse of discretion standard. On the other hand, the trial judge, after striking this responsive pleading, sua sponte entered a default judgment as to liability, which is akin to a summary judgment since the City was expressly foreclosed from presenting liability evidence at the trial of this case. We thus apply a de novo standard of review as to the trial court's entry of the default judgment as to liability against the City. *Stallworth v. Sanford*, 921 So.2d 340, 341 (Miss. 2006) (citing *Davis v. Hoss*, 869 So.2d 397, 401 (Miss. 2004)); *Bowie*, 861 So.2d at 1040 (citing *Hudson v. Courtesy Motors, Inc.*, 794 So.2d 999, 1002 (Miss. 2001)).

¶8.     This case is fact-intensive and it is critical here to provide a time-line of the relevant filings in this civil litigation:

| Date Filed | Document Filed |
|---|---|
| 05/19/1999: | Complaint |
| 06/28/1999: | Answer & Affirmative Defenses |
| 10/21/1999: | Notice of Deposition |
| 12/30/1999: | Notice of Deposition |
| 03/01/2000: | Re-Notice of Deposition |
| 04/11/2000: | Motion for Substitution of Counsel (for Defendants) |
| 04/14/2000: | Order Substituting Counsel |
| 06/09/2000: | Re-Notice of Deposition |
| 06/16/2000: | Agreed order Granting Leave to Amend Complaint |
| 06/27/2000: | Amended Complaint |
| 03/08/2001: | Motion for Trial Setting |
| 03/14/2001: | Entry of Appearance (for Defendants) |
| 09/17/2001: | Notice of Deposition |

| | |
|---|---|
| 11/01/2002: | Notice of Deposition |
| 12/02/2002: | Entry of Appearance (for Defendants) |
| 11/07/2003: | Order Setting Trial Date (04/19/2004) |
| 12/22/2003 | Order Setting Trial Date (04/19/2004) |
| 03/30/2004: | Motion to Withdraw and Substitute Counsel (for Defendants) |
| 04/12/2004: | Order Substituting Counsel (for Defendants) |
| 04/13/2004: | Order of Referral (To Mediation) |
| 07/13/2004: | Entry of Appearance (for Defendants) |
| 07/15/2004: | Motion in Limine to Prohibit the Use of the Deposition of Harry Danielson, M.D. (filed by Defendants) |
| 07/23/2004: | Motion of Defendants to Reopen Discovery for the Sole Purpose of Discovering Whether the Plaintiff Has Recovered Funds for Claims Arising Out of the Accident of May 8, 1998 |
| 07/28/2004: | Plaintiff's Motion for Protective Order |
| 07/29/2004: | Defendants' Response to Plaintiff's Motion for Protective Order |
| 08/04/2004: | Entry of Appearance (for Defendants) |
| 08/05/2004: | Answer & Affirmative Defenses to Amended Complaint |
| 08/11/2004: | Plaintiff's Response in Opposition to Defendants' Motion in Limine to Prohibit the Use of Deposition of Harry Danielson, M.D. |
| 08/11/2004: | Plaintiff's Motion to Strike (Defendants' Answer & Affirmative Defenses to Plaintiff's Amended Complaint) |
| 08/18/2004: | Notice of Deposition |
| 08/18/2004: | Plaintiff's Motion to Quash (Subpoena Duces Tecum) |
| 08/23/2004: | Plaintiff's Motion In Limine (with attached deposition of JPD Officer Tyrone Lewis) (note to GCC-come back to this because Plaintiff atty agrees as to JPD officer testimony regarding emergency vehicles, thus acknowledging that there would be a liability phase of trial). |
| 08/24/2004: | Defendants' Response to Plaintiff's Motion to Strike |
| 08/24/2004: | Defendant's Response to Plaintiff's Motion to Quash |
| 08/24/2004: | Defendant's Response to Plaintiff's Motion In Limine |
| 08/25/2004: | Pre-Trial Order |
| 10/26/2004: | Trial Court's Memorandum Opinion Pursuant to Non-Jury Trial |
| 11/04/2004: | Trial Court's Final Judgment |
| 11/16/2004: | Notice of Appeal (by City of Jackson) |
| 11/16/2004: | Designation of Record (by City of Jackson) |
| 11/16/2004: | Certificate of Compliance (by City of Jackson) |

¶9.    This time-line reveals several events which are of significant import in today's discussion.    Despite the fact that the City did not file an answer to Presley's amended complaint for over four years, Presley's counsel was obviously in no way concerned about seeking a clerk's entry of default [Miss. R. Civ. P. 55(a)] and a default judgment from the trial court [Miss. R. Civ. P. 55(b)].[6]   The record reveals that for the next four years after the filing of her amended complaint, Presley, through counsel, willingly participated in the usual pre-trial process, such as discovery and the filing of several pre-trial motions, and responses to several motions filed by the defendants, and the entry of a pretrial order to govern the trial.

¶10.    On August 18, 2004, obviously in anticipation of going to trial within the next week and having to prove, inter alia, liability on the part of Officer Morton and the City of Jackson, Presley, through counsel, took the deposition of Jackson Police Officer Tyrone Lewis, who was the Commander/Director of Training for the Jackson Police Department (JPD).    In Commander Lewis's deposition, it was revealed that the City would be calling Commander Lewis in the liability phase of the trial to disclose the JPD's procedures "with respect to emergency vehicles."[7]    During the course of the deposition, Presley's counsel became

---

[6]Unquestionably, pursuant to Miss. R. Civ. P. 15(a), the City was required to serve a response to the amended complaint within ten days after service of a copy of the amended complaint.    According to our rules of civil procedure, and the certificate of service appended to the amended complaint, the City was thus required to respond to the amended complaint no later than early July, 2000.    The fact that the City did not respond to the amended complaint until August 5, 2004, caused the responsive pleading to be served and filed more than four years late.

[7]In both her complaint and amended complaint, Presley alleged that as she proceeded through a green traffic signal on Woodrow Wilson Boulevard, Officer Morton, while acting in the course and scope of her employment as a JPD officer, drove her police vehicle "directly

8

concerned that Lewis would be called by the City at trial as an expert, without Lewis having been designated in discovery as an expert. The City's counsel intervened:

> [City's Attorney]: We're not offering him as an expert. He is just being offered as a fact witness only with respect to the police department's procedures, with respect to emergency vehicles and circumstances as what went under (sic), not as an expert.

> [Presley's Attorney]: Well, is he just going to say what the policies and procedures were at the time of this accident?

> [City's Attorney]: Yes.

> [Presley's Attorney]: Okay. But he's not going to testify whether those policies and procedures were violated or complied?

> [City's Attorney]: He's going to offer testimony with regard to JPD's policies and procedures as they pertain to the accident involved in this lawsuit. And along those lines he would be able to say whether her actions were in compliance with JPD's procedures – policies and procedures, or not.

> [Presley's Attorney]: Well, what is an expert witness, if that's not one, counselor?

> [City's Attorney]: Well, he's not an expert witness. He's offering fact information regarding JPD's policies and procedures. He's not offering any kind of professional opinion of any sort, just what the policies and procedures are.

> [Presley's Attorney]: Okay. And would that be the sole summons (sic) of his testimony, counselor?

> [City's Attorney]: That's what we expect at this point, yes.

---

through a red traffic signal" thus colliding with Presley's vehicle and causing the accident. Among the allegations of negligence Presley asserted was that Morton was, inter alia, negligent in the operation of her police vehicle by acting "with reckless disregard for other vehicles utilizing Livingston Road and Woodrow Wilson Boulevard," thus causing her actions to be imputed to the City of Jackson. *See* Miss. Code Ann. § 11-46-9(1)(c).

[Presley's Attorney]: Do you agree that you have not designated Commander Lewis as an expert in this cause, is that right?

[City's Attorney]: We have not designated him as an expert, and we do not intend to designate him as an expert.

[Presley's Attorney]: Okay.

After this exchange between counsel, Presley's counsel then continued his examination of Commander Lewis concerning the existence of various JPD general orders which governed how police officers were to respond to certain emergencies, in order to establish whether Officer Morton was operating her vehicle appropriately and otherwise conducting herself properly in accordance with established JPD procedures in responding to whatever emergency she may have been responding to at the time of the subject accident. This type evidence would go directly to establishing liability under the MTCA on the part of the City. Thus, we again emphasize that exactly one week before trial, Presley and her counsel were evidently not contemplating a last minute request of a clerk's entry of default and court's default judgment on the issue of liability due to the non-filing of the City's answer to Presley's amended complaint – Presley and her counsel were preparing for trial, including preparing to prove liability on the part of Officer Morton and the City.

¶11. We now focus on Presley's original complaint and the timely answer filed by the City to this complaint. In the first three paragraphs of the complaint, Presley alleged that she was an adult resident citizen of Harrison County, Mississippi; that the City of Jackson was a municipal entity organized and operating by virtue of the laws of the state of Mississippi; and, that Miranda Morton was an adult resident citizen of Hinds County, Mississippi. In its answer,

10

the City admitted these allegations. In paragraphs four and five of the complaint, Presley alleged that the Hinds County Circuit Court had in personam jurisdiction and subject matter jurisdiction, and that Presley had complied with the MTCA. In its answer, the City denied these allegations. In paragraph six of the complaint, Presley alleged that at the time of the accident, Morton was employed by the City as a police officer and acting within the course and scope of her employment, causing her actions to be imputed to the City. In its answer, the City admitted that Morton was a City employee, but the City denied the remaining allegations in paragraph six of the complaint. In paragraphs seven through ten of the complaint (erroneously numbered as paragraphs five through eight), Presley alleges how the accident occurred; that Morton's negligence caused the accident and resulting injuries and damages; that Morton committed several acts of negligence, including, inter alia, negligently operating the vehicle with reckless disregard for other vehicles on the streets; and, that as a proximate result of Morton's negligence, Presley suffered serious and permanent injuries, past, present, and future medical expenses, past, present, and future pain and suffering, and past, present and future loss of income. In its answer, the City denied these allegations. Presley's prayer for relief sought a judgment against the City and Morton in the sum of $500,000. In its answer, the City denied that Presley was entitled to any relief and requested that Morton and the City be dismissed from the lawsuit.

¶12. In this same answer to the original complaint, the City asserted fifteen affirmative defenses: (1) The complaint failed to state a claim upon which relief could be granted; (2) the complaint was barred by the statute of limitations; (3) the defendants were immune from suit

11

under the MTCA; (4) the plaintiff failed to comply with the notice requirement under the MTCA; (5) the defendants were entitled to qualified immunity; (6) the plaintiff's negligence was the sole proximate cause of the accident; (7) the plaintiff was contributorily negligent; (8) the plaintiff's actions created unusual circumstances to which Morton properly reacted, causing the accident to be unavoidable; (9) the defendants breached no duty owed to the plaintiff; (10) the plaintiff failed to mitigate her damages; (11) the plaintiff's statutory violations caused her to be negligent per se; (12) the plaintiff's statutory violations were the sole proximate cause of the accident; (13) the plaintiff had the "last clear chance" to avoid the accident and failed to do so; and, (14) Morton could not be held personally liable if she was acting in the course and scope of here employment with the City.[8]

¶13. Thus, as of the filing of the City's answer and affirmative defenses on June 28, 1999, the issues were joined in this litigation, as confirmed by the actions taken by the parties, through counsel, from 1999 all the way up to the day of trial – August 25, 2004. The amended complaint was filed on June 27, 2000. A meticulous review of the amended complaint, when laid side-by-side with the original complaint and compared, line-by-line, reveals that the original complaint and the amended complaint are identical, except for one sentence which was added to the amended complaint – "Additionally, Presley has incurred property damage as a proximate result of Morton's negligence and the resulting accident." That's the sum total of the amendment. In its untimely filed answer and affirmative defenses to the amended

---

[8]The fifteenth defense was a paragraph-by-paragraph response to the complaint.

complaint, the City virtually mirrored its timely filed responsive pleading to the original complaint, but the City did add three additional affirmative defenses. The City added affirmative defenses of res judicata based on the Union County Circuit Court lawsuit; accord and satisfaction based on the execution of the general release in settlement of the first lawsuit; and, setoff or credit for sums Presley received in the settlement of the first lawsuit.

¶14. We next turn to the pretrial order which was signed by the parties, through counsel, jointly submitted to the trial judge, and signed by the trial judge. Paragraph two of the pretrial order proclaimed that "[t]he pleadings are amended to conform to this pretrial order." Paragraph three stated that "[t]he following claims (including claims stated in the complaint, counter-claims, cross-claims, third-party claims, etc.) have been filed . . . [t]he Affirmative Defenses are as set out in the Answer to the Amended Complaint." In paragraph six of the pretrial order, concerning pending motions, there were listed the plaintiff's motion to strike the City's answer and defenses to the amended complaint; the plaintiff's motion to quash a subpoena duces tecum and a trial subpoena; the plaintiff's motion in limine concerning the testimony of JPD officer Tyrone Lewis; and, the City's motion in limine. In the pretrial order the parties likewise set out their respective versions of the accident. As previously noted, Presley basically asserted, inter alia, that she was lawfully operating her motor vehicle on Woodrow Wilson Boulevard when her vehicle was suddenly struck by a JPD vehicle driven by Morton while Morton was acting within the course and scope of her employment with the City. The City, on the other hand, asserted in the pretrial order "that at the time and place of the accident, Officer Morton was responding to an emergency call concerning an injured person

13

lying in the street. To navigate the intersection where the accident occurred, she had activated her police siren, blue lights, and all other traffic was yielding to her actions. [Presley] failed to yield to her warnings, and this was the proximate cause of the accident. Officer Morton acted in keeping with her General Orders and training."

¶15. We deem it critical to continue our review of the pretrial order. Presley, in the pretrial order, asserted various contested issues of fact, including (1) whether it was necessary for Morton to proceed to the call she was responding to with the blue lights and siren activated; (2) whether Morton was in violation of JPD policies and procedures as well as General Orders; (3) whether the call to which Morton was responding required her to "proceed through a red light at Five Point Intersection during rush hour traffic;" (4) whether Presley had an opportunity to avoid the collision with Morton; (5) whether the actions or inactions of Morton caused or contributed to the accident; and, (6) whether the actions or inactions of Morton constituted reckless disregard for the safety and well being of others. The remaining contested issues of fact, from Presley's perspective, related to her injuries and damages suffered as a result of the accident. Presley also asserted in the pretrial order that one of the contested issues of law was whether Morton's actions constituted "reckless disregard for the safety and well-being of others." The pretrial order also revealed that many of the exhibits proposed to be offered by Presley went to the issue of liability on the part of Morton and the City. The same was true for the City's proposed exhibits. Two of the witnesses listed by Presley were JPD officers, and at least three of the listed witnesses for the defendants were JPD officers. Finally, in the pretrial order, paragraph fourteen stated: "Counsel suggests the following

14

additional matters to aid in the disposition of this civil action." The joint answer of the parties, through counsel – "None."

¶16. Thus, based on the factual and procedural history of this case, as the parties and counsel appeared in court for the trial of this case on August 25, 2004, it is apparent that the City and the plaintiff, Lynda Key Presley, walked into the courtroom prepared to, and expecting to, try this case, both as to liability and damages. As of the trial date, although the City's answer (and affirmative defenses) to the amended complaint was unquestionably filed over four years late, Presley, nor her counsel, had requested the clerk to enter a clerk's default pursuant to Miss. R. Civ. P. 55(a), nor had they requested that the court enter a default judgment as to liability. Miss. R. Civ. P. 55(b). The only motion attacking the City's late filing of the answer and affirmative defenses to the amended complaint was a motion to strike. Thus, we now turn briefly to the motion to strike.

¶17. We quote here the pertinent portions of Presley's motion to strike, which was filed on August 11, 2004, fourteen days before the trial date:

> 1. On May 19, 1999, Plaintiff initiated this litigation against the Defendants by filing a Complaint with this Court.
>
> 2. Subsequently, on June 27, 2000, and after having obtained leave of Court, Plaintiff filed her Amended Complaint with this Court. Pursuant to Miss. R. Civ. P. 15(a), the Defendants' answer to the Amended Complaint was due 10 days after the filing of the Amended Complaint, or July 7, 2000.
>
> 3. On August 5, 2004, Defendants filed their Answer and Affirmative Defenses to Amended Complaint, over four years after their answer was due.
>
> 4. The Defendants' Answer and Affirmative Defenses to Plaintiff's Amended Complaint is extremely untimely and should be stricken.

15

> WHEREFORE, PREMISES CONSIDERED, Plaintiff, Lynda Kay Presley, respectfully requests that after a hearing hereon the Court enter an order striking the Answer and Affirmative Defenses to the Amended Complaint filed by the Defendants, City of Jackson and Miranda Morton.

Presley's motion to strike the City's untimely filed answer and affirmative defenses to the amended complaint indisputably did not mention the words "default" or "default judgment."

¶18. With this backdrop, we now move to the courtroom on the day of trial. On August 25, 2004, the parties and counsel appeared before the Circuit Court for the First Judicial District of Hinds County, Judge Tomie T. Green, presiding. The trial judge called the case up for trial and sought announcements from the parties. Presley, through counsel, announced ready for trial. The City announced ready for trial, but informed the trial court that there were some "preliminary matters" to be taken up. The City brought forward its pending motion in limine prohibiting Presley's use of Dr. Danielson's deposition. The transcript covers seven pages of discussion back and forth between defense counsel and the trial court on this issue, and without seeking any comments or response from Presley's counsel, the trial court overruled the City's motion to exclude Dr. Danielson's deposition.[9]

¶19. Presley's counsel next called up the motion in limine concerning the testimony of JPD officer Tyrone Lewis. Presley's counsel confirmed with the trial court that Presley had no objection to officer Lewis's testimony concerning the JPD's policies and procedures relating

---

[9]We should clarify that immediately before overruling the City's motion to exclude Dr. Danielson's deposition, the trial court did inquire of Presley's counsel if he still planned to use Dr. Danielson's deposition, and upon receiving an affirmative response from Presley's counsel, the trial court promptly overruled the City's motion.

16

to how officers were to respond to emergencies, so long as officer Lewis did not attempt to offer opinion testimony since he had not been designated in discovery as an expert. However, Presley's counsel did object to Lewis's overall testimony since Lewis had no personal knowledge of the facts of the accident, especially as it concerned officer Morton's conduct on the date of the accident. In the end, the trial court overruled the plaintiff's motion and set out the permitted parameters of Lewis's testimony.

¶20.    For today's discussion of the issue before us, it is now necessary to set out a verbatim recitation from the trial transcript in order to accurately depict the events which next transpired between counsel (primarily, the City's counsel) and the trial court:

> [THE COURT]: Now let's see. I now have a second motion in limine from the plaintiff. Let me see if this is the same one. Now that one was Tyrone Lewis.
>
> [PLAINTIFF'S COUNSEL]: Your Honor, it was only one motion in limine filed by the Plaintiff.
>
> THE COURT: Didn't you have a motion to strike?
>
> [PLAINTIFF'S COUNSEL]: Yes, Your Honor. Just briefly what that was, we filed an amended complaint in 2000, I believe with leave of the court and we did not receive an answer to the amended complaint filed by the City until I believe last week. It was over four years past due. There was no request for additional time, no order granting additional time, and on that basis we would move to strike them and that answer as untimely.
>
> THE COURT: May I find out why there was no answer filed. We're not even dealing with any liability issue if there has never been an amended answer filed.
>
> [CITY'S COUNSEL]: Your Honor, the amended complaint only added one aspect and that was property damage. It was covered in a general denial to the first complaint, it was denied by paragraph. However, when we got into this we discovered that in 2001 the plaintiff filed an action on the first law suit, the first

17

accident which in that action she complained in the complaint in Union County, Mississippi, that the first accident was –

THE COURT: Let me stop you and go back. I'm dealing with an amended complaint that was filed. When did you answer the amended complaint?

[CITY'S COUNSEL]: We did just a few weeks ago, Your Honor.

THE COURT: Four years later?

[CITY'S COUNSEL]: Apparently. The amended answer -- there was no request for a default, there was no -- you know, the use of the amended answer, answer to the amended complaint was to raise the issues from the second lawsuit.

THE COURT: I know what an amended complaint is, counsel, you do too. And you know that it is fatal not to answer a complaint; am I correct, that you have 30 days to answer a complaint.

[CITY'S COUNSEL]: Well, actually, an amended complaint, it would be even shorter than that, Your Honor.

THE COURT: Then why wasn't it answered?

[CITY'S COUNSEL]: I have no answer for that, Your Honor, except that when we discovered it we did file an answer and used it to raise the issues from the second accident -- I'm sorry, the first accident that had come to our attention, and is the basis of our affirmative defenses.

THE COURT: You got a problem, counsel, as does the City of Jackson and Ms. Miranda Morton because that's not just cause for failure to answer an amended complaint over four years.

[CITY'S COUNSEL]: Well, Your Honor, the only difference in the --

THE COURT: It doesn't matter whether it's the only difference. That's why there is a procedure book. If request for admissions are not answered within 30 days then they are deemed admitted whether the other side asked for it or not. It is no difference if an amended answer is filed and no response is made in four years. That's the first thing you should have dealt with before we dealt with anything else.

18

[CITY'S COUNSEL]: Well, Your Honor, I can only deal with the record I've got, of course. And the purpose of filing the answer was to raise, of course, because it had not been filed, and to raise the issues related to the discovery of the litigation involving the first accident in which the plaintiff was claiming the same damages apparently from the first accident in 2001 she's now attempting to assert in this accident.

THE COURT: I understand, counsel. That does not change the fact that we have a complaint that was never answered. You-all recognized that you had never filed an amended answer and nobody attempted to resolve this case with the plaintiffs?

[CITY'S COUNSEL]: We did not discover -- frankly, I asked to get the amended answers so we could amend it to raise the new defenses, and that was when we discovered it had never apparently been answered, so that's when we filed our amended answer with the new defenses. If it had been filed, we would have asked the court to amend it to bring in the new defenses relating to the first accident and the suit filed in Union County.

THE COURT: I would tend to think that any rights that you had to raise anything after the amended answer was filed was waived, counsel.

[CITY'S COUNSEL]: Well, I don't know how they're prejudiced.

THE COURT: You got some law that says that, because somebody doesn't file an answer they are prejudiced. You are prejudiced by the mere fact that you have not -- that you have been prejudiced at this point inasmuch as you can't raise any issues nor affirmative defenses if the answer is stricken and liability as a matter of law then is established and the only issue is an issue of damages.

[CITY'S COUNSEL]: Well, Your Honor, there is an answer to the original complaint which raises all of the affirmative answers and denials except for an allegation as to property damage. However, the amended answer raises the issues of the newly discovered situation of the lawsuit in Union County.

THE COURT: Do you know of any case law that advances an answer forward from a first complaint to the second answer? I don't. I don't know of any law that says if you answered something in the first complaint and the complaint is amended -- not supplemented, but it's amended, that in order for you to reserve those affirmative defenses, you had to file an answer to that amended complaint.

19

[CITY'S COUNSEL]: Well --

THE COURT: And this is an auto accident?

[CITY'S COUNSEL]: Yes, Your Honor.

THE COURT: And the City is claiming that it is the plaintiff that was at fault?

[CITY'S COUNSEL]: We are, Your Honor, in our affirmative defenses.

THE COURT: That were only filed a couple of weeks ago.

[CITY'S COUNSEL]: Which is consistent with our first answer.

THE COURT: I'll suggest to you if I proceeded that this area would be a reversible error. I'm going to take a 30 minute break. I suggest you-all talk in terms of this case because the city is in a very tenuous position having not filed that answer.

(BREAK TAKEN)

THE COURT: Yes, sir.

[CITY'S COUNSEL]: May it please the court, comes now the defendants through counsel and moves the court for excuse of the default and further leave to file a tardy answer in conformity with the answer to the amended complaint on file or alternatively for leave to adopt our original answer as answer to the amended complaint.

THE COURT: The record notes your motion filed. The motion before the court at this time is the motion to strike the amended answer of the defendant that was filed on August 5th, 2004.

Under our rules of law governing civil actions filed, there is required person answer, and the rules require that within 30 days of the complaint an answer be filed by the defendant.

The rules also require that if the court allows for an amended complaint, that within 10 days there be a reply to the amended answer (sic).

This case was filed, May 19th, 1999. There was an original complaint filed at that time and within the 30 day period, June 28th, 1999, an answer was filed. Patricia Monson was the attorney for the City of Jackson. Summons were issued to Harvey Johnson for the City, summons to Miranda Morton, both on 6-30.

On 10-99 there was notice of a deposition. December 30th, there was a notice of a deposition. On March 1 of 2000, there was a renotice of a deposition. April 11th, 2000, there was a motion to substitute counsel. Ms. Munson withdraw, Michael Wolfe was substituted, an order granting the withdrawal and the substitution.

April 2000, renotice of a deposition, May of 2000, notice of a deposition; June of 2000, renotice of a deposition, and on June 16th, 2000, an order by this court allowed the plaintiffs to and the City agreed to amend complaint. On June 27th, 2000, that complaint was amended.

The next thing that's on the docket is March 2001, a motion for a trial setting and an entry of appearance, Anthony Williams for the City. There was a notice of deposition in September 2001, notice of deposition November 2001, and then an entry of appearance for the City, Sharon Gipson. Order set a trial date for this case as April 19th, '04. Motion to withdraw and substitute counsel was made by the City, March of this year, and then a motion in April of this year where Gipson withdrew for the City and Andrea Carmen was substituted for the City. The court granted an order on April 12th.

The court referred this case to mediation on April 13th. Evidently there was no settlement, and I then have July '04, entry of appearance, Paul Neville for the City.

7-15th, notice of hearing, and then motion in limine on July 15th; July 23rd request to reopen discovery; July 28th, motion of the plaintiff for a protective order and a response by the City July 28th as well. Then entry of appearance, Barbara Bluntson for the City on August 4th, and finally on August 5th, answer in defenses of the City of Jackson by Paul Neville was filed to the amended complaint.

I've not seen a case where an amended answer was not made for four years. There is nothing in the file to indicate that there was any agreement for an extension, no extension was requested of this court that would allow the amended answer to come later than 10 days after the amended complaint in June of 2000. There is no excusable neglect. This case has had at least five attorneys

that should have reviewed the file.[10] And it appears that the order for the amended complaint was agreed to by the City, which again put them on notice that they had 10 days to answer.

The motion made by plaintiff -- by defense counsel on the date of trial are without persuasion for the court.

The court looked in the case law as it made determination regarding failure of parties to answer once there has been filed an amended complaint. The court found no exception made in the law for amended complaints and even few that are made when a complaint has been -- an original complaint has not been answered. The burden is then on this court to determine whether it should strike the answer of the City and proceed with the case.

The court is going to strike the answer of the City based on the delay and the neglect of the file for a four year period and no response at all to the amended complaint.

As a result of striking the answer, the court enters default and will hear from the parties on the issues of damages.

¶21.    This Court can glean several absolutes from the "hearing" on Presley's motion to strike the City's answer and affirmative defenses to the amended complaint.  After Presley's counsel gave a very brief three-sentence explanation in support of the motion to strike, all Presley's counsel had to do was sit down and let the trial judge take over from there.  The next ten pages of the transcript are consumed with the trial judge's "dressing down" of the City's attorney for the admittedly four-year late answer to the amended complaint.  The trial court either refused to accept, or failed to grasp, the fact that the only difference between the complaint and the amended complaint was the addition in the amended complaint of this one sentence –

_____

[10]We can appreciate the trial judge's frustration over the fact that during the life of this civil litigation, the City had numerous attorneys making appearances in this case, and this fact no doubt contributed to the City's negligent failure to timely answer the amended complaint.

22

"Additionally, Presley has incurred property damage as a proximate result of Morton's negligence and the resulting accident." After having attempted to "persuade" the parties to settle the case because of the City's "very tenuous position having not filed that answer," and after having realized that no settlement was forthcoming, the trial court then proceeded into a lengthy bench ruling which ended not only in the granting of Presley's motion to strike the City's late answer to the amended complaint, but also the granting of an unrequested entry of a default judgment as to liability and a pronouncement to all parties that the trial court would proceed to a hearing only on the issue of damages.

¶22. Without ever uttering another word to the trial judge, Presley received not only a favorable ruling on her motion to strike the City's answer to the amended complaint, she received that which to this day she has yet to ask the trial court for – a default judgment as to liability. Throughout the life of this civil proceeding, neither Presley nor her counsel ever filed a document with the trial court clerk or the trial court which contained the word "default" or "default judgment." Neither Presley nor her counsel ever uttered the words "default" or "default judgment" in the presence of the trial judge. The lengthy procedural history of this case, as we have already set out, unquestionably reveals that Presley and her counsel, from the day this suit was filed until the day they walked into the courtroom on August 25, 2004, were prepared to, and expected to, go to trial shouldering the burden of proving both liability and damages against Morton and the City of Jackson.

¶23. It is critical to this discussion to remember that there existed on the day of trial a jointly submitted pretrial order signed by the attorneys and the trial judge, and that this order

provided, inter alia, that "[t]he pleadings are amended to conform to this pretrial order." By this time, the City had filed its answer to the amended complaint. We have on prior occasions found the trial court to be in error in violating a pretrial order, or allowing the parties, through counsel, to violate a pretrial order. *Fagan v. State*, 894 So.2d 576, 580 (Miss. 2004); *Singley v. Singley*, 846 So.2d 1004, 1013 (Miss. 2002) (*R'hg denied*, 2003 Miss. LEXIS 283, *27, ¶26 (Miss. 2003). *See also* *In Re Adoption of Minor Child*, 931 So.2d 566, 573 (Miss. 2006) (chancellor did not err in finding that pleadings and pretrial order, when read together, stated claim for relief sufficient to defeat motion to dismiss for failure to state claim upon which relief could be granted); *Bowie v. Montfort Jones Mem'l Hosp.*, 861 So.2d 1037, 1042 (Miss. 2003) (parties/attorneys who violate pretrial orders do so at their own peril); *Taylor v. Welch*, 609 So.2d 1225, 1232 (Miss. 1992) (chancellor did not err in overruling appellees' objection to evidence notwithstanding appellant's failure to answer amended complaint). We thus find that, based on the existing pretrial order, the trial court abused its discretion by striking the City's answer to the amended complaint. However, the trial court did not stop there. The trial court then, without any request from Presley, sua sponte entered a default judgment as to liability, and proceeded to conduct a bench trial on damages only.

¶24. At the conclusion of the bench trial, the trial court took this matter under advisement, and on October 26, 2004, the trial court entered its eight-page memorandum opinion. On the issue of liability, the trial court stated in its memorandum opinion:

> On May 19, 1999, Plaintiff initiated this litigation against the Defendants by filing a Complaint with this Court. Subsequently, on June 27, 2000, and after

24

having obtained leave of Court, by Agreed Order, Plaintiff filed her Amended Complaint. Pursuant to Miss. R. Civ. P. 15(a), the Defendants' Answer to the Amended Complaint was due 10 days after the filing of the Amended Complaint, or July 7, 2000. The Defendants did not request additional time to file their Answer and Affirmative Defenses. During the four years that this action has been pending, five (5) or more attorneys entered an appearance on behalf of the Defendants. On August 5, 2004, Defendants, less than a month before trial, filed their Answer and Affirmative Defenses to Plaintiff's Amended Complaint. Thus, Defendants' answer was more than four years past due. Plaintiff requested that the untimely Answer and Affirmative Defenses filed by Defendants to Plaintiff's Amended Complaint be stricken. Miss. R. Civ. P). 6(b) provides as follows:

> When by these rules or by notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, *or (2) upon motion made after the expiration of the specified time (sic) period permit the act to be done where failure to act was the result of excusable neglect.* (emphasis added)

There was no reasonable cause for the delay nor excusable neglect offered by the Defendants in regard to their failure to timely answer or respond to Plaintiff's Amended Complaint.

After careful consideration of the Motion to Strike and the arguments of the parties, the Defendants' Answer and Affirmative Defenses to the Plaintiff's Amended Complaint were stricken. Accordingly, a Default Judgment against the Defendants on the issue of liability was properly entered. It is noted that an incorporated municipality is treated the same as any other litigant and is vested with the same rights and responsibilities. As such, a trial court judge has the authority to enter a default judgment against the city as a party to a civil action. *See Bell vs. City of Bay St. Louis*, 467 So.2d 657 (Miss. 1985).

Thus, the issue of liability is resolved in favor of the Plaintiff. Consequently, only evidence regarding damages was tried by the court.

25

¶25. The above memorandum opinion unquestionably reveals a detailed discussion as to why the City's blatantly overdue answer should be stricken. However, noticeably absent from the memorandum opinion is any justification for the entry of the default judgment as to liability. The trial judge reasoned basically that since the answer to the amended complaint was stricken, entry of a default judgment as to liability against the defendants necessarily followed. With this reasoning, we do not agree. The trial judge wholly failed to acknowledge at any time that all the parties, including the plaintiff, spent considerable time preparing for trial on all issues; and, that the plaintiff, notwithstanding the obvious non-filing of the City's answer and affirmative defenses to the amended complaint for our four years, never sought a clerk's entry of default or a default judgment from the trial court. On the other hand, we agree with the trial judge that a municipality is to be treated as any other litigant, "vested with the same rights and responsibilities;" however, a municipality, like any other litigant, is also entitled to fair treatment from our trial courts.[11] Likewise, we decipher little from **Bell v. City of Bay St. Louis**, 467 So.2d 657 (Miss. 1985), which would undergird the proposition for which the trial court cited this case in its memorandum opinion. One of the issues in **Bell** was the refusal of the trial judge to grant a default judgment against the city pursuant to statute.[12] **Id.** at 660-61.

---

[11]Of course, our Legislature has seen fit, through the enactment of the MTCA, to afford to our governmental entities, including municipalities, certain rights and privileges not otherwise enjoyed by our private citizens, including private corporations.

[12]Since the litigation in **Bell** was commenced prior to the effective date of the Mississippi Rules of Civil Procedure, this issue was controlled by then-existing Miss. Code Ann. § 11-7-121 (1972).

26

¶26. Likewise, noticeably absent from the trial court's bench ruling in open court and its subsequently entered memorandum opinion, is a discussion of Miss. R. Civ. P. 55, which governs entry of a default and a default judgment. This rule states in pertinent part:

> **(a) Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.
>
> **(b) Judgment.** In all cases the party entitled to a judgment by default shall apply to the court therefor. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application; however, judgment by default may be entered by the court on the day the case is set for trial without such three days' notice. If in order to enable the court to enter judgment or to carry it into effect it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing with or without a jury, in the court's discretion, or order such references as it deems necessary and proper.

In addition to our numerous cases which have through the years interpreted our judicially enacted rules of civil procedure, the Comments under the rules offer considerable guidance. For instance, we find these comments under Rule 55:

> Rule 55(a) does not represent the only source of authority in these rules for the entry of a default that may lead to judgment. As a result, a party who has filed a responsive pleading or otherwise defended may still find himself in default for noncompliance with the rules at some later point in the action. For example, Rule 37(b)(2)(C) and Rule 37(d) both provide for the use of a default judgment as a sanction for violation of the discovery rules.

Certainly, any party, such as the City of Jackson, could find itself in default for various reasons, such as failure to comply with our discovery rules, even though it may have initially timely filed responsive pleadings.

¶27. Likewise, the Comments make it perfectly clear that our appellate courts have authority to review the entry of a default judgment. Note the following additional comments found under Rule 55:

> When a judgment by default is entered, it is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as a judgment rendered after a trial on the merits. A judgment entered pursuant to Rule 55(b) may be reviewed on appeal to the same extent as any other judgment.

¶28. Finally, the following comments to Rule 55 set out, inter alia, some of the rights and obligations of the parties, including the defaulting party, as well as the obligations of the trial courts when confronted with a default judgment issue:

> The ability of the court to exercise its discretion and refuse to enter a default judgment is made effective by the two requirements in Rule 55(b) that an application must be presented to the court for the entry of judgment and that notice of the application must be sent to the defaulting party if he has appeared. The latter requirement enables the defaulting party to show cause to the court why a default judgment should not be entered or why the requested relief should not be granted. A party's failure to appear or be represented at any stage of the proceedings following an initial appearance does not affect this notice requirement. Service of the notice must be made at least three days before the hearing on the application, and must afford the party an opportunity to appear at the hearing. The purpose of this portion of Rule 55(b) is simple: It is intended to protect those parties who, although delaying in a formal sense by failing to file pleadings within the thirty day period, have otherwise indicated to the moving party a clear purpose to defend the suit. On the other hand, when a defaulting party has failed to appear, thereby manifesting no intention to defend, he is not entitled to notice of the application for a default judgment under this rule.
>
> In determining whether to enter a default judgment, the court is free to consider a number of factors that may appear from the record. Among these are the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue, whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay

involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider whether the default was caused by a good-faith mistake or excusable neglect, how harsh an effect a default judgment might have, and whether the court thinks it later would be obliged to set aside the default on defendant's motion.

We thus glean from Rule 55(b) and these comments that while the trial court has authority, under certain circumstances, to enter a default judgment on the day of trial, the appearing defaulting party at least has a right to attempt to defend against a potential entry of a default judgment. In today's case, based on Presley's filing of her motion to strike the City's late filing of its answer and affirmative defenses to the amended complaint, the City no doubt knew that it would be called upon in open court to argue against the trial court's striking of this pleading, but until the defendants walked into the courtroom on the trial date, not only the defendants, but also the plaintiff, were totally unaware of the fact that the trial judge was ultimately going to sua sponte enter default judgment as to liability.

¶29. Also glaringly absent from the record is any consideration by the trial judge of the Comments' suggested factors to aid the trial courts in determining whether entry of a default judgment is appropriate, such as "the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue, whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt." Certainly, in today's case, the amount of money involved was an important factor, as evidenced by the trial court's ultimate entry of a money judgment against the City of Jackson in an amount approaching a quarter of a million dollars. We would certainly conclude that the default was "largely

29

technical" in that the only assertion laid out in the complaint and the amended complaint that the defendants had not responded to was Presley's one sentence claim for property damage found in the amended complaint. Finally, there is absolutely no doubt that the plaintiff was not "substantially prejudiced by the delay involved." There are several obvious reasons for our conclusion that the plaintiff suffered no prejudice. First of all, the plaintiff made no request for a default judgment. Also, the plaintiff, for over a four-year period, had prepared to try her case on all issues, including the issue of liability. In fact, the plaintiff and her counsel walked into the courtroom on the day of trial, prepared to present evidence on the issue of liability. Little did the plaintiff know that she would be given a "gift" from the trial judge by way of an unsolicited default judgment as to liability.

¶30. A case analogous to today's case is *Chassaniol v. Bank of Kilmichael*, 626 So.2d 127 (Miss. 1993). In *Chassaniol*, the Bank of Kilmichael filed a circuit court complaint and Chassaniol timely responded to the complaint. *Id.* at 128. Over Chassaniol's objection, the trial court granted the Bank's motion for leave to file an amended complaint and allowed Chassaniol ten days to respond to the amended complaint. *Id.* Chassaniol failed to timely respond to the amended complaint, and the Bank secured a clerk's entry of default. *Id.* Chassaniol thereafter filed a motion to set aside the entry of default, and later likewise filed a motion to ratify and allow the answer to the amended complaint which Chassaniol by then had filed.[13] *Id.* at 128-29. At a later scheduled hearing on the motion, Chassaniol learned that the

---

[13]During the life of this state court litigation, Chassaniol removed this case to federal court, and while the case was still pending in federal court, Chassaniol filed his answer to the

30

circuit court had already entered a default judgment against him, and Chassaniol, therefore requested that the default judgment be set aside. This request was denied by the trial court, which in turn entered a money judgment against Chassaniol and in favor of the Bank. *Id.* at 129. In addressing the issue of whether the trial court was in error for entering a default judgment against Chassaniol, this Court stated, inter alia:

> The Rule [Miss. R. Civ. P. 55(b)] requires a three day notice and contemplates that a hearing will be held when a party has made an appearance. Both the court and opposing counsel were on notice by virtue of the documents in the court file that Chassaniol was contesting every element of the Bank's case . . . Chassaniol filed an answer to the original complaint, filed an objection to the amended complaint, filed a motion to set aside the entry of default, pursued the case in federal court, and filed an answer to the amended complaint while in federal court.
>
> ************
>
> Chassaniol clearly evidenced every intention of defending the suit. To deny him the opportunity to appear and show cause to the court why the default should not be entered deprived him of the protection built into the Rules. This order was clearly erroneous and this case will be reversed.

*Id.* at 131-32.

¶31.     While, on the one hand, default judgments are appropriately entered daily on numerous occasions throughout the state in our trial courts, especially when there is a total failure of a duly served defendant to appear and respond to a complaint, on the other hand, we have stated that when the propriety of the entry of a default judgment is in question, and when there appears a desire on the part of a defaulting litigant to defend, the entry of a default judgment is not the

---

amended complaint.     The federal district judge eventually remanded this case back to state court. *Id.* at 130.

preferred way of disposing of litigation. *See, e. g.*, *Chassaniol*, 626 So.2d at 135 (citing *Guar. Nat'l Ins. Co. v. Pittman*, 501 So.2d 377, 387-88 (Miss. 1987)).

¶32. Judgments, including default judgments, are no doubt entitled to the presumption of finality. When confronted with justifiable circumstances, we have affirmed the trial court's denial of a motion to set aside a default judgment. *Capital One Services, Inc. v. Rawls*, 904 So.2d 1010, 1015-17 (Miss. 2004); *Pointer v. Huffman*, 509 So.2d 870, 876-77 (Miss. 1987); *Pittman*, 501 So.2d at 388-89. However, today's case is wholly lacking in merit as to any justifiable reason for the trial court's sua sponte entry of a default judgment as to liability against the defendants.

¶33. With all of this having been said, in the end, we find that, based on the existence of the pretrial order, the trial judge abused her discretion in granting Presley's motion to strike the City's untimely filed answer and affirmative defenses to the amended complaint. Likewise, we are constrained to find that the trial judge abused her discretion in sua sponte entering an unrequested default judgment as to liability. Accordingly, we find as a matter of law from the record before us that the trial judge committed error in the entry of the default judgment as to liability against the City. Thus, we are likewise required to reverse the final judgment entered against the City of Jackson and in favor of Lynda Key Presley in the amount of $219,763.63.

¶34. Based on our disposition of this issue, it logically follows that it becomes unnecessary to address the remaining issues assigned on appeal.

**CONCLUSION**

¶35.    Unfortunately for the parties, and especially for Lynda Key Presley, who unquestionably suffered injuries and damages due to the subject vehicular accident, the trial judge, for whatever reason, unnecessarily interjected herself into the proceedings by deciding on her own motion to enter an unsolicited default judgment as to liability against Miranda Morton and the City of Jackson.    In reality, the only allegation in the plaintiff's complaint and amended complaint to which the City did not timely respond was the claim for property damage to the plaintiff's vehicle as a result of the subject accident.    All parties, including the plaintiff, appeared at the courthouse on the trial date prepared to go to trial on all issues.    If the trial judge had not sua sponte granted a default judgment as to liability, but instead simply allowed the parties to try their respective lawsuits, the outcome could have possibly been the same at the trial court level, and the chances of receiving an affirmance from this Court on appeal would have been much greater. While trial judges have to stand firm and maintain control of their courtroom in sometimes contentious situations, trial judges on the other hand must likewise maintain decorum by separating themselves from the contentiousness and exhibiting neutrality.    We implore our trial judges to take heed as to what has occurred in this case. Justice has not been served in this case since the parties are now called upon to begin anew to move toward yet another trial date to someday bring finality to this case.

¶36. For the reasons stated, the trial court's final judgment is reversed, and this case is remanded to the Circuit Court for the First Judicial District of Hinds County for a new trial on the issues of liability and damages.

¶37. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., NOT PARTICIPATING.**